3 August 2000

NO. 4-98-0704

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit court of

) Sangamon County

ROBERT D. JONES, ) No. 94CF451

Defendant-Appellant. )

) Honorable

) Leo J. Zappa, Jr.,

) Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE COOK delivered the opinion of the court:

Defendant, Robert D. Jones, was charged with the first degree murder (720 ILCS 5/9-1 (West 1992)) of Dr. Henry Dickerman, who disappeared from his home in Springfield on August 12, 1992.  Defendant was convicted at a jury trial in August 1996, but this court reversed that judgment and remanded for a new trial.  
People v. Jones
, No. 4-96-0855 (February 23, 1998) (unpublished order under Supreme Court Rule 23)
.  Following remand defendant was convicted of first degree murder at a jury trial in June 1998 and sentenced to 85 years in prison.  Defen

dant appeals.  We affirm.  

I. BACKGROUND

Defendant had been doing some repairs and painting to Dickerman's home at the time Dickerman disappeared.  After the disappearance, it was discovered that a number of Dickerman's checks were missing and that checks totaling $6,845 had been made out to defendant.  Defendant eventually pleaded guilty to forging a $4,200 check and was sentenced to the Department of Correc

tions.  

Defendant was interviewed a number of times:  on October 6, 1992, by a Federal Bureau of Investigation agent; on July 12, 1993, by various Springfield detectives; on July 27, 1994, while in the Big Muddy Correctional Center, by Springfield detectives; on August 3, 1994, while in the Franklin County jail; on August 15, 1994, while in jail; and on August 16, 1994, when he was served with an arrest warrant for first degree murder.

In 
Jones
, defendant argued that the trial court erred in admitting the August 15, 1994, statement into evidence because it was made during the course of plea negotiations, in violation of Supreme Court Rule 402(f) (134 Ill. 2d R. 402(f) ("[N]either the plea discussion nor any resulting agreement, plea, or judg

ment shall be admissible against the defendant in any criminal proceeding")).  During the July 27, 1994, interview, defendant had asked the detectives to inform the State's Attorney that he would plead guilty to involuntary manslaughter in return for a 10-year sentence.  In the August 15, 1994, interview, the detec

tives asked defendant to write out exactly what deal he would be willing to accept.  Defendant wrote out a two-page statement setting forth the deal he would accept and that statement was ultimately read into evidence at trial.  Although the investiga

tors had told defendant they could not negotiate a guilty plea, they did say they would relay the information to the State's Attorney's office.  We concluded that defendant's two-page handwritten statement clearly demonstrated his willingness to plead guilty in exchange for concessions and was a plea-related statement inadmissible pursuant to Rule 402(f).  

In his present appeal, defendant argues that the trial court erred on remand when it admitted into evidence the July 27, 1994, and August 16, 1994, statements, which defendant asserts were also plea related.  Defendant also argues that the court erred when it refused to reconsider its ruling in the first trial that the two statements were admissible.

A. The July 27, 1994, Interview

In July 1994, while defendant was serving his prison term for the forgery conviction, a detective told defendant's mother to tell defendant that if he thought his crime was less than first degree murder, he should speak with detectives.  Defendant subsequently requested to meet with Springfield detec

tives regarding Dickerman's disappearance.

During the interview, defendant sought to make a deal, but the detectives advised him they did not have authority to negotiate a plea.  Defendant asked the detectives to inform the State's Attorney that he would plead guilty to involuntary manslaughter in return for a 10-year sentence to run concurrently with his federal sentence.  The detectives indicated they would take the message to the State's Attorney.

Defendant told the detectives he knew they did not have the murder weapon, even though he had not been previously advised that Dickerman's disappearance was being investigated as a murder.  (Dickerman's decomposed remains had been found in September 1992, at the bottom of a 20- to 25-foot-high bluff in a fishing and hiking area southwest of St. Louis.)  Defendant also inquired about the blood found in the bathroom even though he was never told blood was found there.  

Defendant told the detectives that earlier in the week of August 11, 1992, Dickerman had discovered his forgeries.  Both men agreed that defendant would do additional work around the house in return for Dickerman's not pressing charges.  On August 11, 1992, after returning from purchasing supplies, defendant found Dickerman dead in his living room with a spot of blood on the top of his head.  Defendant was unable to resuscitate Dickerman, so he left the house but returned later that evening to place the body on the couch.  

B. The August 16, 1994, Interview

During an August 15, 1994, interview, defendant wrote out the deal he would be willing to accept, the two-page written statement we held was erroneously admitted in 
Jones
.  The next day, detectives returned and served defendant with an arrest warrant for first degree murder.  A detective told him that if the crime was less than first degree murder it would behoove him to speak to the detectives and tell them what happened.  Because defendant had earlier told the detectives he was guilty only of involuntary manslaughter and concealing a homicide, one of the detectives brought a copy of the Criminal Code of 1961 to show defendant the statutory definitions of the crimes and to specifi

cally show him the elements of first degree murder.  The detec

tive had interviewed defendant on July 12, 1993, August 3, 1994, August 15, 1994, and August 16, 1994.  On each of those occa

sions, defendant indicated that he would like to work out a deal and asked that his proposal be communicated to the State's Attorney, and on each occasion the detectives said they would do so.

After being given his 
Miranda
 rights (
Miranda v. Arizona
, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)), defendant made a new statement to the detectives.  This time, defendant stated that on August 11, 1992, he was at Dickerman's home when Dickerman confronted defendant about the forged checks.  During the confrontation, Dickerman grabbed his chest, fell into the fireplace, and hit his head on a brick in the fireplace hearth.  Defendant left the house with the door unlocked, hoping someone else would find the body.  When defendant returned to the house the next day, he noticed blood on the top of Dickerman's head.  He placed the body in Dickerman's car, took a shovel and Dickerman's personal effects, and drove the body to southern Illinois to bury it.  

II. ANALYSIS

A. Collateral Estoppel

The State argues that defendant should have attacked the July 27, 1994, and August 16, 1994, interviews in his first appeal and that the trial court properly refused to reconsider its decision in the first trial to admit those interviews, on the basis of collateral estoppel.  Certainly a trial court should not be forced to start over, after a case is remanded, and rule again on every motion.  However, principles of collateral estoppel do not bar relitigation of a pretrial ruling after remand, where special circumstances are present.  
People v. Enis
, 163 Ill. 2d 367, 386, 645 N.E.2d 856, 864 (1994).  A trial court retains jurisdiction to reconsider an order it has entered, even after remand, as long as the cause is pending before the trial court.  
Enis
, 163 Ill. 2d at 387, 645 N.E.2d at 865.  Viewing the matter in terms of the doctrine of law of the case, there is no bar to the trial court conducting a new hearing.  
Enis
, 163 Ill. 2d at 387, 645 N.E.2d at 865; see also 
People v. Huff
, 308 Ill. App. 3d 1046, 1049, 721 N.E.2d 1219, 1221 (1999), 
appeal
 
allowed
, 188 Ill. 2d 574 (2000).  

Special circumstances were present in this case that required the trial court to reexamine its rulings on these two interviews in the first trial.  Our decision in 
Jones
 addressed the precise issue that was raised after remand as to these two interviews.  It was not necessary for us to address the other two interviews when we decided 
Jones
.  The trial court, which knew after remand that its ruling was erroneous as to the one inter

view, should have reconsidered its ruling as to the other two interviews to make certain that ruling did not suffer from the same infirmities.     

B. Standard of Review

Generally, a trial court's ruling on a motion to suppress evidence is subject to reversal only if it is manifestly erroneous.  
People v. Nielson
, 187 Ill. 2d 271, 286, 718 N.E.2d 131, 141 (1999).  This clearly erroneous or manifestly erroneous test is based on the understanding that suppression motions usually raise mixed questions of law and fact.  
People v. Gray
, 305 Ill. App. 3d 835, 837, 713 N.E.2d 781, 782 (1999).  Where neither the facts nor the credibility of the witnesses is at issue, 
de
 
novo
 review is appropriate.  
Nielson
, 187 Ill. 2d at 286, 718 N.E.2d at 141; see also 
In re G.O.
, 191 Ill. 2d 37, 46-

47, 727 N.E.2d 1003, 1008-09 (2000) (motion to suppress involun

tary confession should be reviewed 
de
 
novo
 so that appellate courts may maintain control of and clarify the legal principles).  Even where the facts are undisputed, where reasonable persons could draw divergent inferences from those facts, any question of fact should be resolved by the trier of fact.  
Jackson v. TLC Associates, Inc.
, 185 Ill. 2d 418, 424, 706 N.E.2d 460, 463 (1998); 
Rhodes v. Illinois Central Gulf R.R.
, 172 Ill. 2d 213, 241, 665 N.E.2d 1260, 1274 (1996).  The inquiry is whether only one conclusion may be drawn from the undisputed facts.  
Reynolds v. Decatur Memorial Hospital
, 277 Ill. App. 3d 80, 84, 660 N.E.2d 235, 238 (1996).  We will reverse the trial court's ruling here only if it is manifestly erroneous.    

C. Rule 402(f)

To accomplish its purpose of encouraging the negotiated disposition of criminal cases, the boundaries of Rule 402(f) must be delineated in relation to the reasonable expectations of the accused at the time the statement was made.  Did the accused exhibit a subjective expectation to negotiate a plea, and was this expectation reasonable under the totality of the circum

stances?  
People v. Friedman
, 79 Ill. 2d 341, 352, 403 N.E.2d 229, 235 (1980) (rejecting the State's argument that the state

ment be made "'as an integral part of a 
bona
 
fide
 negotiation'").  In 
Friedman
, defendant spoke to an investigator for the office of the Attorney General.  Defendant inquired about "making a deal" and stated, "'If I'm convicted, I would rather go to a Federal prison as opposed to a State prison.'"  
Friedman
, 79 Ill. 2d at 350, 403 N.E.2d at 234.  The investigator responded, "'I have no control over that, talk to Mr. Rosenberg.'"  
Friedman
, 79 Ill. 2d at 350, 403 N.E.2d at 234.  Defendant's statements were excluded, but the supreme court indicated that defendant may have believed he was dealing with a prosecutor rather than with a police detective.  
Friedman
, 79 Ill. 2d at 350, 352, 403 N.E.2d at 234, 235 ("[The investigator] testified that it was a practice of his office to answer all calls with the introduction, 'Attorney General's office'").  The court also recognized it was the offer to make a deal that had been admitted.  "[T]here is a distinction between a statement made in the furtherance of a plea discussion and an otherwise independent admission [that] is not excluded by our rule."  
Friedman
, 79 Ill. 2d at 353, 403 N.E.2d at 236.

Every guilty person who voluntarily speaks to a detec

tive probably hopes to benefit from the conversation, either by convincing the detective that he did not commit the crime or by obtaining leniency for his cooperation.  We should resist an approach that characterizes every conversation between a defen

dant and a detective as a plea negotiation.  The police have an investigatory function that the courts and even the State's Attorney do not have.  For that reason, Federal Rule of Criminal Procedure 11(e)(6) (Fed. R. Crim. P. 11(e)(6)) was changed so as to cover only statements made by the defendant in court when a plea was tendered or during plea discussions with the prosecutor.  5 W. LaFave, J. Israel & N. King, Criminal Procedure §21.2(h), at 106 (2d ed. 1999).  The explanation was that the rule as limited "'fully protects the plea discussion process authorized by'" federal law "'without attempting to deal with confrontations between suspects and law enforcement agents, which involve problems of quite different dimensions'" that "'must be resolved by that body of law dealing with police interrogations.'"  5 W. LaFave, J. Israel & N. King, Criminal Procedure §21.2(h), at 106-

07 (2d ed. (1999), quoting Fed. R. Crim. P. 11, Advisory Commit

tee Note.  

Where the detectives tell defendant that they cannot make a deal but can only relay information to the prosecutor, defendant could not have entertained a reasonable expectation the detectives were authorized to negotiate a plea.  
People v. Taylor
, 289 Ill. App. 3d 399, 400-01, 682 N.E.2d 310, 312 (1997) (admitting defendant's question about what would happen to him if he pleaded "no contest" to the pending complaint); 
McKenna v. State
, 101 Nev. 338, 344-45, 705 P.2d 614, 618-19 (1985).  Not all statements made in hopes of some concession are necessarily plea discussions.  
People v. Victory
, 94 Ill. App. 3d 719, 721, 722, 419 N.E.2d 73, 75, 76 (1981) (after defendant told an officer that he would accept 10 years and asked if the State's Attorney would be willing to plea bargain, the officer answered, "'I don't know.  You have to check with the State's Attorney.'"); 
People v. Sexton
, 162 Ill. App. 3d 607, 614, 515 N.E.2d 1359, 1364 (1987) (defendant did not manifest a subjective belief he was entering plea negotiations; rather, he indicated that since he was going to be charged, he might as well talk).  Where the officers simply tell defendant that any cooperation on his part would be reported to the State's Attorney's office for consider

ation, any resulting statements are not plea related.  
People v. Ramirez
, 244 Ill. App. 3d 136, 147, 613 N.E.2d 1116, 1123 (1993).

The police officers here wanted to talk to defendant about the facts of the crime.  Defendant wanted to talk to somebody about making a deal.  The police officers told defendant that they had no authority to discuss a deal.  With that out of the way, the parties entered into a "give and take" regarding the facts of the case, and defendant gave information in an attempt to exonerate himself, sometimes in response to statements by the police indicating they knew defendant's prior statements were not truthful.  Defendant did not give information because he believed he was required to do so as a part of a plea agreement or as a preliminary step to any plea agreement.  Defendant's statements constituted an independent admission, not excluded under 
Fried

man
.  
Friedman
, 79 Ill. 2d at 353, 403 N.E.2d at 236. 

Some decisions are willing to admit the very offer to make a deal.  In 
People v. Ward
, the prosecutor argued to the jury that if defendant had not committed the offense, he would not have said "'hey, let's make a deal.'"  
People v. Ward
, 192 Ill. App. 3d 544, 549, 554, 548 N.E.2d 1120, 1124, 1127 (1989), refusing to follow 
People v. Connolly
, 186 Ill. App. 3d 429, 436, 542 N.E.2d 517, 522 (1989) (defendant's inquiry whether deals could be made in Mason County not admissible).  
Ward
 determined there was no plea negotiation because the defendant was not offering to enter a plea, he was offering to incriminate others in unrelated incidents.  
Ward
, 192 Ill. App. 3d at 546, 548 N.E.2d at 1122; see also 
People v. Tennin
, 123 Ill. App. 3d 894, 898, 463 N.E.2d 202, 205 (1984) (negotiation for release without bond or dropping of charges, not a plea negotiation); 
People v. Hanks
, 174 Ill. App. 3d 555, 560, 528 N.E.2d 1044, 1047 (1988) (defendant would admit he started fire in exchange for a notice to appear, not a plea negotiation); 
cf.
 
Friedman
, 79 Ill. 2d at 350, 352, 403 N.E.2d at 234, 235 (inquiry about making a deal and statement, "'If I'm convicted, I would rather go to a Federal prison,'" held to be a plea negotiation).  It might be more accurate to view the 
Ward
 defendant's offer as an "offer to plead guilty plus."  ("I will plead guilty 
and
 incriminate others in exchange for a reduced sentence.")  It is difficult to understand how an attempt to negotiate a reduced sentence or other favorable treatment does not also involve an attempt to plead guilty.  Even if those decisions are incorrect, however, they do not affect the result here.  Although the jury was told about the offer in 
Jones
, and we reversed on that basis, the jury was not told about any offer in the present case.  Instead, the jury was given information defendant had revealed about the facts of the case.  Accordingly, the July 27, 1994, and August 16, 1994, interviews are independent admissions and are not excluded under 
Friedman
.      D. Other Issues

Defendant argues appellate counsel in 
Jones
 was inef

fective for failing to argue the July 27, 1994, and August 16, 1994, statements were inadmissible.  In light of our ruling above, regarding those statements, we need not address that issue.  Defendant next argues the trial court erred in not instructing the jury on involuntary manslaughter, because there was evidence that decedent died after he was inadvertently knocked down.  At trial, defendant denied having any knowledge of how Dickerman died or was moved to the St. Louis area and stated that Dickerman was alive and well when defendant last saw him.  The trial court could have reasonably concluded no credible evidence in the record supported the giving of the involuntary manslaughter instruction.  Defendant argues the State failed to prove that the murder occurred in Sangamon County, but venue may be proved by circumstantial evidence (
People v. Sims
, 244 Ill. App. 3d 966, 1004, 612 N.E.2d 1011, 1040 (1993)), and venue is proper in any county where any element of the offense was commit

ted (
People v. Glass
, 239 Ill. App. 3d 916, 923, 606 N.E.2d 655, 661 (1992)).  We conclude that venue was sufficiently proved in this case.  Defendant argues the information should not have been amended on the first day of trial to allege the possibility that defendant created a probability of "great bodily harm," but we agree with the State that the amendment corrected only a formal defect and defendant was not surprised or prejudiced.  We also agree that defendant did not have a right to automatic substitu

tion of judge from the judge who presided at the first trial.  

III. CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court.

Affirmed.            

GARMAN, J., concurs.

STEIGMANN, J., dissents.

JUSTICE STEIGMANN, dissenting:

I agree with everything the majority has stated in its well-reasoned opinion with one significant exception.  That exception is the majority's analysis of the 
Friedman
 case and its conclusion that we can affirm this defendant's conviction consis

tent with what the supreme court said in 
Friedman
.  Because I believe that 
Friedman
 compels the conclusion that defendant's July 27 and August 16, 1994, statements were admitted in viola

tion of Rule 402(f), I respectfully dissent.  

Under current Illinois law, a court, in determining whether a particular statement is plea related, must consider the following: (1) whether the accused exhibited a subjective expec

tation to negotiate a plea and, if he did, (2) whether his expectation was reasonable under the totality of the circum

stances.  
Friedman
, 79 Ill. 2d at 351, 403 N.E.2d at 235.  In this case, because defendant did not testify as to his subjective expectations, the ob­jec­tive circumstances surrounding his state

ments may be considered in evaluating wheth­er they were plea related.  See 
Taylor
, 289 Ill. App. 3d at 402, 682 N.E.2d at 313, citing 
Friedman
, 79 Ill. 2d at 353, 403 N.E.2d at 236.  Those circumstances include (1) to whom the defendant is speaking, (2) the nature of the conversation, and (3) what the parties to the conversation stated.  See 
Friedman
, 79 Ill. 2d at 352-53, 403 N.E.2d at 235-36
.  
For a statement to be plea related, "it must contain the rudiments of the negotiation process, 
i.e.
, a will­

ingness by defendant to enter a plea of guilty in return for concessions by the State."  
Friedman
, 79 Ill. 2d at 353, 403 N.E.2d at 236.

On both July 27 and August 16, 1994, defendant sug

gested to police ­investigators that he was will­ing to consider­­ plead­ing guilty to a less­er of­fense in re­turn for a less­er sen­

tence.  At the July 27, 1994, meeting, defendant specifically stated that he would plead guilty to involuntary manslaughter and would accept a sentence of no more than 10 years, to run concur

rently with his federal sentence.  The in­ves­ti­gators told de­

fendant that they could not negoti­ate a guilty plea but would relay the in­formation to the State's Attorney's of­fice. 
 That exchange formed the context in which defendant mentioned the murder weapon and the blood in the bathroom--both highly incrimi

nating statements at the time.   

At the July meeting, de­fen­dant also re­quest­ed infor­

mation about the pen­al­ties for invol­untary man­slaughter, and on August 16, 1994, the police inves­ti­gators returned with an Illinois statute book contain­ing that infor­mation.  At that meeting, which occurred only one day after defendant had reduced his plea offer to writing on the assumption that the detectives would take it to the State's Attorney, the investigators told defendant that it would "behoove" him to tell them what happened if it amounted to less than first degree murder.  Defendant again told the investigators that he wanted to work out a deal.  He then provided a new statement, which differed from his earlier statements.

Defendant's statements on July 27 and August 16, 1994, evinced his in­tent to enter a guilty plea to involuntary man

slaughter in return for a lesser sentence and dem­on­strated his will­ing­ness to plead guilty in ex­change for conces­sions.  See 
Sex­ton
, 162 Ill. App. 3d at 613, 515 N.E.2d at 1364.  The evi­

dence also es­tab­lished that the state­ments were to be de­livered to the State's Attorne­y's office by the police investi­ga­tors.  Defen­dant was not merely asking the inves­tigators wheth­er the State's Attorney would plea bargain, he was asking the investiga­

tors to convey a specific plea offer to the State's Attorney, and they informed him that they would convey the information. 

Defendant stated his interest in negotiating a plea early in both the July 27 and August 16 interviews, before he made any incriminating statements.  
Because defendant's early interview statements contain "the rudiments of the negotia­tion process," under current Illinois law, his subsequent statements on those dates consti­tuted plea-re­lat­ed state­ments and were therefore inad­mis­sible pur­su­ant to Rule 402(f). 

Under 
Friedman
, the law in Illinois is essentially the same as federal law was under Federal Rule of Criminal Procedure 11(e)(6) (Fed. R. Crim. P. 11(e)(6)) before it was amended to its present, much more limited, form.  Professor LaFave's treatise explains that Federal Rule of Criminal Procedure 11(e)(6) (Feb. R. Crim. P. 11(e)(6)) was "changed so as to cover only statements made by [a] defendant in court when a guilty plea was tendered or during plea discussions with [a] 
prosecutor
."  (Emphasis added.)  5 W. LaFave, J. Israel & N. King, Criminal Procedure §21.2(h), at 106 (2d ed. 1999).  Under the prior version of the rule, a defendant's statement made in the custody of two postal inspec

tors said he would plead guilty to armed robbery if the murder charge against him was dropped was inadmissible.  
United States v. Herman
, 544 F.2d 791 (5th Cir. 1977).  Even though one inspec

tor responded that they were not in a position to make any deals in that regard, the 
Herman
 court held that because the defendant made the statements during the course of a conversation in which he sought concessions from the government in return for a guilty plea, the statements were inadmissible under the then-version of Federal Rule 11(e)(6).  
Herman
, 544 F.2d at 798.  At that time, Federal Rule 11(e)(6) made inadmissible "'statements made in connection with, and relevant to, any' offer to plead guilty."  5 W. LaFave, J. Israel & N. King, Criminal Procedure §21.2(h), at 106 n.325 (2d ed. 1999), quoting Fed. R. Crim. P. 11(e)(6).

Just as 
Herman
 was the vehicle for changing federal law, perhaps this case might cause the Supreme Court of Illinois to reconsider 
Friedman
 and change either Supreme Court Rule 402(f) or that court's interpretation of the rule to be more in line with Federal Rule 11(e)(6), which may be regarded as provid

ing all the legitimate protections to which any suspect is entitled.