NO. 4-00-0088

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

KENNETH R. BELER,

Defendant-Appellant.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Sangamon County

No. 98CF1080

Honorable

Steven H. Nardulli,

Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In August 1999, a jury convicted defendant, Kenneth R. Beler, of (1) possession of a controlled substance (720 ILCS 570/402(a)(2)(B) (West 1998) (effective July 30, 1998)); (2) possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(B) (West 1998) (effective June 19, 1998)); (3) possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 1998)); and (4) possession of cannabis (720 ILCS 550/4(a) (West 1998)).  The trial court later sentenced him to 12 years in prison with 181 days' credit for time served prior to sentencing.  The court also ordered defendant to pay (1) a $50 crime lab fee, (2) a $2,000 mandatory drug assessment, (3) a $6,380 street-value fine, (4) a $25 "Crime Stoppers" fee, and (5) court costs.

Defendant appeals, arguing that (1) he was denied a fair trial when (a) a State's witness testified regarding plea-related negotiations, and (b) the prosecutor made improper remarks in opening statements and closing arguments; (2) he is entitled to two additional days' sentencing credit; (3) he is entitled to a $915 credit against his fines, pursuant to section 110-14 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-14 (West 1998)); and (4) the trial court lacked authority to order him to pay $25 to Crime Stoppers.  We affirm in part, reverse in part, and remand with directions. 

I. BACKGROUND

Because the parties are familiar with the evidence presented at defendant's trial and defendant does not challenge the sufficiency of the evidence, we review it only to the extent necessary to put his arguments in context.  

Around 7 p.m. on November 23, 1998, Illinois State Police Officer Timothy Hansen was patrolling the "Mechanicsburg blacktop," a two-lane paved road, when he saw defendant standing on the shoulder of the road.  As Hansen pulled over to see if defendant needed assistance, he observed a Chevy Blazer in the ditch along the side of the road.  Defendant told Hansen that he had driven off the road and someone else had gone to get help.  Hansen had defendant accompany him to the Blazer and stand at the hood of the car.  Hansen asked defendant for his identification.  Defendant pulled his wallet out of his jacket pocket and "slammed" it on the hood.  At the same time, what looked to Hansen like a rock of crack cocaine bounced and came to rest on the hood.  After a second, defendant swept the "rock" off the hood into the grass.  

When Hansen later searched defendant, he found the following:  (1) in defendant's right front jacket pocket (the same pocket where defendant's wallet had been), three large rocks of crack cocaine; (2) in his inside-left breast pocket, a compressed brick of powder cocaine; (3) in his left jacket pocket, a crack pipe and a poker; (4) in his pants pocket, a small bag of cannabis; and (5) in his wallet, $540 in cash.

George T. Bonnett, a Springfield police detective assigned to the Illinois State Police Drug Task Force, testified that he interviewed defendant on November 23, 1998, at "District 9 Headquarters."  The main objective of the interview was to determine whether defendant would reveal his supplier or participate in a controlled drug buy.  Bonnett testified regarding that objective as follows:

"Q.  [PROSECUTOR:] Inspector, you were asked questions about *** your role at this point to see if the defendant wanted to cooperate.  Could you give us an idea of what you mean by that?

A.  A lot of times somebody who gets caught with a large amount of narcotics--

DEFENSE COUNSEL:  Well, your Honor, I'm going to object to this.  It goes beyond the scope of cross.  I didn't elicit this information.

THE COURT:  All right.  Sustained.

Q.  [PROSECUTOR:] [Defense counsel] asked you the question that the defendant didn't cooperate in this case and nothing ever came of this and that's what you wanted to do, but that's not what happened, do you remember that question?

A.  Yes.

Q.  Now, did the [d]efendant ever make any attempts to cooperate with you?

A.  Yes, he did.

Q.  Please describe those for the [c]ourt?

A.  He agreed to page Larry Neal to see if he couldn't get him to deliver some cannabis that night.

Q.  And, what was the result when the [d]efendant made that page in order to cooperate?

A.  We never got a page back.  He never did call us."

In his closing argument, the prosecutor referred to Bonnett's testimony as follows:

"Do you remember when [defendant] was being interviewed at District 9 in regards to where his supply came from, who he was delivering to?  The reason the trooper took him back to District 9, to the Central Illinois Enforcement Group, was in order to gain his cooperation.  You heard inspector Bonnett's earlier testimony.  He testified that they were trying to do a controlled buy, or find out what his source was.  The [d]efendant paged an individual to assist.  ***  He paged an individual that never did call back.  So even in District 9, the [d]efendant was beginning to attempt to cooperate with the drug investigation *** in this case.  Again, it's overwhelming, obvious evidence of [d]efen-dant's knowledge."

During defense counsel's closing argument, he argued that the State had failed to prove its case, in part, because it had failed to obtain fingerprint evidence from the seized items.  In rebuttal, the prosecutor made the following argument:

"That's kind of like the fingerprint argument.  Let's take this marker, right here.  I put it in my pocket.  I take this marker out--actually, let's say the bailiff takes this marker out of my pocket, then when I'm speaking with the clerk, later, I tell her, yeah, I possessed this marker.

Now, we come into court and there's no fingerprint evidence from the marker.  Does that mean it wasn't in my coat?  Does that mean the bailiff didn't take it out of my pocket?  Does that mean I didn't admit it to the clerk?  Of course not; of course not.  It's a smoke screen.  Your job is to determine the truth."

The jury convicted defendant, and the trial court sentenced him as stated.  This appeal followed. 

II. ANALYSIS

A. Defendant's Fair Trial Arguments

Defendant first argues that he was denied a fair trial when (1) the jury heard testimony related to plea negotiations, and (2) the prosecutor made improper remarks in his opening statement and closing arguments.  Defendant did not object to the allegedly improper testimony and argument at trial, nor did he raise these issues in a posttrial motion.  Thus, he has forfeited these issues on appeal unless the plain error rule applies.  
People v. Alvine
, 173 Ill. 2d 273, 297, 671 N.E.2d 713, 724 (1996).  Under that rule, a reviewing court may consider a trial error that was not properly preserved (1) when the evidence is closely balanced, or (2) where the error is so fundamental and of such magnitude that the defendant has been denied a fair trial.  
People v. Williams
, 193 Ill. 2d 306, 348-49, 739 N.E.2d 455, 477 (2000).  Defendant does not argue that plain error occurred based on closely balanced evidence, only that the claimed errors denied him a fair trial.  

1. 
Bonnett's
 
Testimony

Defendant first contends that Bonnett's testimony about defendant's willingness to cooperate with the police investigation constituted testimony regarding plea negotiations, which is inadmissible pursuant to Supreme Court Rule 402(f) (177 Ill. 2d R. 402(f)).  We disagree.

Supreme Court Rule 402(f) provides as follows:  

"If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, *** neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding."  177 Ill. 2d R. 402(f).    

"Not all statements made in hopes of some concession are necessarily plea discussions."  
People v. Jones
, 315 Ill. App. 3d 500, 506, 734 N.E.2d 207, 213 (2000) 
rev'd on other grounds, jurisdiction retained, & remanded with directions
, 197 Ill. 2d 346, 757 N.E.2d 464 (2001).  In determining whether a particular statement is plea related, courts must consider (1) whether the accused exhibited a subjective expectation to negotiate a plea, and, if he did, (2) whether his expectation was reasonable under the totality of the circumstances.  
People v. Friedman
, 79 Ill. 2d 341, 351, 403 N.E.2d 229, 235 (1980).  When a defendant's subjective expectations are not explicit, a court may look to the objective circumstances surrounding the statement to determine whether it was plea related.  
Friedman
, 79 Ill. 2d at 353, 403 N.E.2d at 236.  "Before a discussion can be characterized as plea related, it must contain the rudiments of the negotiation process, 
i.e.
, a willingness by defendant to enter a plea of guilty in return for concessions by the State."
  
Friedman
, 79 Ill. 2d at 353, 403 N.E.2d at 236.

Defendant asserts that this case is similar to 
People v. Hill
, 78 Ill. 2d 465, 469-74, 401 N.E.2d 517, 519-22 (1980), in which the supreme court held that the defendant's statements were plea related even after the assistant State's Attorney told the defendant that he did not have authority to enter a plea bargain.  Bonnett's testimony regarding defendant's cooperation with the police is in no way analogous to the statements at issue in 
Hill
.  According to the plea-related testimony in 
Hill
, the defendant's conversation with an assistant State's Attorney began with the defendant's statement, "I want to talk a deal" and included his offer to confess to two murders and testify for the State in exchange for the minimum sentence.  
Hill
, 78 Ill. 2d at 470, 401 N.E.2d at 519-20. 

The record before us contains no indication that defendant expected to negotiate a plea during the November 23, 1998, interview with Bonnett.  Defendant did not express an interest in confessing, pleading guilty, or seeking concessions from the State in exchange for a plea.  As this court wrote in 
Jones
, 315 Ill. App. 3d at 506, 734 N.E.2d at 212: 

"Every guilty person who voluntarily speaks to a detective probably hopes to benefit from the conversation, either by convincing the detective that he did not commit the crime or by obtaining leniency for his cooperation.  We should resist an approach that characterizes every conversation between a defendant and a detective as a plea negotiation.  The police have an investigatory function that the courts and even the State's Attorney do not have."  

Because none of the circumstances present support our concluding that defendant had a subjective expectation of negotiating a plea with Bonnett, the trial court did not err by allowing Bonnett's testimony.  See 
People v. Williams
, 193 Ill. 2d 1, 27, 737 N.E.2d 230, 245 (2000) ("Before invoking the plain error exception, however, 'it is appropriate to determine whether error occurred at all.'  
People v. Wade
, 131 Ill. 2d 370, 376[, 546 N.E.2d 553, 555] (1989)").

2. 
The
 
Prosecutor's
 
Remarks

Defendant next contends that he was denied a fair trial when the prosecutor (1) during his opening statement and closing argument, predicted that the jury would "do the right thing" by finding defendant guilty; and (2) during rebuttal argument, referred to defense counsel's closing argument as a "smokescreen."  We conclude plain error did not occur in either instance.

It is well established that prosecutors are afforded wide latitude in closing argument and may argue facts as well as reasonable inferences drawn from the evidence.  
People v. Williams
, 192 Ill. 2d 548, 573, 736 N.E.2d 1001, 1015 (2000).  In reviewing a challenge to remarks made by a prosecutor during closing argument, the comments must be considered in the context of the parties' closing arguments as a whole.  Moreover, the reviewing court must indulge in every reasonable presumption that the trial court properly exercised its discretion in determining the propriety of the remarks.  
People v. Simms
, 192 Ill. 2d 348, 397, 736 N.E.2d 1092, 1125 (2000).   

At defendant's trial, the prosecutor concluded his opening statement to the jury with the following paragraph:

"It is at that time when you apply the law to the facts and you use your common sense that you will retire to the jury room and deliberate upon your verdict, and it is at that time after considering all the proof, that you will do the right thing and that you will find the [d]efendant guilty of each of the counts that he has been charged with.  Thank you."

The prosecutor concluded his closing argument as follows:

"After we finish arguments here this morning, Judge Nardulli will instruct you as to the law, and it's at that point, you simply apply your common sense to the facts, to the circumstances of this case.  The People of the State of Illinois are confident that you will do the right thing and find the [d]efendant guilty of those counts I mentioned."

Defendant contends that by his remarks, the prosecutor essentially told the jury that it was its "job" to convict defendant and that this case is analogous to cases in which prosecutors have argued that the jury had a duty to convict under its oath.  See, 
e.g.
, 
People v. Castaneda
, 299 Ill. App. 3d 779, 783, 701 N.E.2d 1190, 1192 (1998) (in which the prosecutor emphasized the jury's duty as part of the justice system and emphatically argued that the State's "unrebutted evidence" required the jury to find the defendant guilty if the jury was to live up to its oath).  We disagree.  

In this case, the prosecutor twice indicated that the jury would be "doing the right thing" by finding defendant guilty; once in his opening statement and once in closing argument.  Taken in context, we see no danger that these remarks caused the jury to abdicate its role as fact finder and convict defendant out of a sense of duty. 

Defendant also contends that the prosecutor committed reversible error when he referred to defense counsel's argument as a "smoke screen."  We agree with the State that the prosecutor's remark was properly made in response to defense counsel's closing argument.  See 
People v. Hudson
, 157 Ill. 2d 401, 441, 626 N.E.2d 161, 178 (1993) (the prosecutor may respond to comments by defense counsel that clearly invite a response); 
People v. Smith
, 154 Ill. App. 3d 837, 849, 507 N.E.2d 543, 552 (1987) (the prosecutor's comment during rebuttal that defense counsel was setting up a "smoke screen" was a proper response to defense counsel's closing argument).  

In this case, the prosecutor described defense counsel's attempt to focus on the minor inconsistencies in the case as a "smoke screen."  The prosecutor's remark did not disparage the integrity of the defense as did the extensive remarks at issue in the two cases cited by defendant, 
People v. Kidd
, 147 Ill. 2d 510, 544, 591 N.E.2d 431, 447 (1992) (in which "the assistant State's Attorney did not make just one fleeting, inadvertent remark regarding this 'smoke screen' metaphor.  Rather, he commented 
eight
 
times
 that defense counsel was 'raising a smoke screen,' or 'filling this courtroom with smoke today,' or 'hoping that the smoke he raises in this room today will strangle the truth like it strangled the life of the ten children'" (emphasis in original) who died in a fire set by defendant), and 
People v. Emerson
, 97 Ill. 2d 487, 497, 455 N.E.2d 41, 45 (1983) (in which the prosecutor described the smoke screen as "'composed of lies and misrepresentations and innuendoes'" and said that "all defense attorneys try to 'dirty up the victim'").  

C. Sentencing Credit

Defendant next argues that he is entitled to two additional days' sentencing credit under section 5-8-7(b) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-8-7(b) (West 1998)).  The State concedes that defendant was in custody for 183 days prior to sentencing and that the trial court erroneously awarded him credit for only 181 days.  We accept the State's concession.  

D. Credit Against Fines

Defendant next argues that he is entitled to a $915 credit ($5 per day for 183 days in custody) against his street- value fine, pursuant to section 110-14 of the Code (725 ILCS 5/110-14 (West 1998)).  The State concedes that defendant is entitled to such credit, and we accept the State's concession.  

E. Crime Stopper's Fee

Last, defendant argues that the trial court lacked the authority to order him to pay $25 to Crime Stoppers.  The State concedes that no provision of the Unified Code authorizes such a fee and we accept the State's concession.  As the State points out, sections 5-6-3(b)(12) and 5-6-3.1(c)(12) of the Unified Code provide for the imposition of fines for the purpose of reimbursing local anticrime programs (730 ILCS 5/5-6-3(b)(12), 5-6-3.1(12) (West 1998)).  However, those provisions define possible conditions of probation, conditional discharge, and supervision.  No similar provisions authorize imposition of such a fine when a sentence of incarceration is imposed.  See 730 ILCS 5/5-9-1, 5-9-1.1, 5-9-1.4 (West 1998).  Accordingly, that part of the court's sentencing order imposing the $25 fine for Crime Stoppers is void and set aside.

III. CONCLUSION

For the reasons stated, we affirm in part, reverse in part, and remand with directions to modify the sentencing order as stated. 

Affirmed in part and reversed in part; cause remanded with directions.

MYERSCOUGH, J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

The majority concludes there was no plea discussion in this case because the defendant did not satisfy the technical requirements necessary to establish that a particular statement is plea related.  "The record before us contains no indication that defendant expected to negotiate a plea during the November 23, 1998, interview with Bonnett."  Slip order at 8.

Consider this hypothetical.  During questioning by the police, defendant is asked if he is interested in making a deal which would result in a lighter sentence.  The defendant fails to respond.  Would the prosecutor be allowed to argue to the jury that defendant's willingness to consider a deal demonstrated his guilt, that an innocent person would have rejected any suggestion of a deal for a lighter sentence?  Would the lack of any "indication that defendant expected to negotiate a plea" allow the prosecutor to argue that defendant was interested in a negotiated plea?   

I would not exclude, as plea-related, a defendant's explanation of the facts surrounding the commission of the offense simply because defendant expected to gain some benefit by telling the police what had happened.  I would, however, exclude a defendant's inquiry whether a deal is possible, particularly when that inquiry is not accompanied by any discussion of the facts of the case.  See 
Jones
, 315 Ill. App. 3d at 506-07, 734 N.E.2d at 213, 
rev'd on other grounds, jurisdiction retained, & remanded with directions
, 
197 Ill. 2d 346, 757 N.E.2d 464.

What occurred in this case is particularly inappropriate.  It was defendant's theory that the jacket he was wearing at the time of the offense, in which the contraband was located, belonged to his brother.  Defense counsel asked Officer Bonnett whether he had checked out defendant's brothers, what happened to the jacket, and whether the papers in the jacket had been fingerprinted to determine to whom they belonged.  Bonnett basically answered "I don't know" to all those questions.  Accordingly, defense counsel asked Bonnett whether he and Baird were the detectives investigating this offense.  Bonnett did not answer that question but volunteered "our main objective was that he was going to cooperate in other" investigations, help with his supplier, or "make a controlled delivery."  Defense counsel, diverted from his inquiry, told Bonnett that "none of that happened in this case, right," and Bonnett agreed.  When Bonnett continued to volunteer statements about whether defendant would help the police, defense counsel asked Bonnett just to answer his question yes or no.  On redirect, the prosecutor immediately asked about Bonnett wanting to see whether defendant would cooperate.  The court sustained an objection, but the prosecutor kept coming back to the subject, falsely stating that defense counsel "asked you the question that the [d]efendant didn't cooperate in this case."  During closing argument, the prosecutor argued that defendant's willingness and attempt to cooperate with the police demonstrated defendant's guilt.  

The majority cites 
Friedman
 for its view that in the absence of a formal plea negotiation Rule 402(f) does not apply.  
Friedman
, however, reversed a conviction where defendant had inquired about making a deal and stated, "If I'm convicted, I would rather go to a Federal prison as opposed to a State prison."  
Friedman
, 79 Ill. 2d at 350, 403 N.E.2d at 234.  "We cannot agree with the State that an essential element of a plea discussion is the requirement that the statement sought to be excluded be made 'as an integral part of a 
bona
 
fide
 negotiation' with the appropriate parties in attendance."  
Friedman
, 79 Ill. 2d at 352, 403 N.E.2d at 235.  
Friedman
 does not espouse the harsh rule set out by the majority.  Instead 
Friedman
 recognizes the significance of the negotiation process to the administration of justice and the devastating effect of the introduction of plea-related statements in the trial of the accused.  
Friedman
, 79 Ill. 2d at 351, 403 N.E.2d at 235.  "The purpose of our rule is to encourage the negotiated disposition of criminal cases through elimination of the risk that the accused enter plea discussion at his peril."  
Friedman
, 79 Ill. 2d at 351, 403 N.E.2d at 235.  

If it is improper for a prosecutor to refer to clear plea negotiations which do not result in a plea, it should be even more improper for a prosecutor to suggest that unclear plea negotiations were an acknowledgment of guilt on the part of the defendant.