THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARCUS JENKINS, Defendant-Appellant.

First District (1st Division)    No. 1—01—0073

Opinion filed August 26, 2002.

Rita A. Fry, Public Defender, of Chicago (Timothy J. Leeming, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Alan J. Spellberg, and Aaron R. Bond, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE COHEN delivered the opinion of the court: Juvenile defendant Marcus Jenkins was tried as an adult before a jury and convicted of first degree murder (720 ILCS 5/9—1(a)(1) (West 1998)) in the gang-related shooting death of 79-year-old Edna Dela Rosa. The trial court sentenced Jenkins to a term of 50 years' imprisonment. Jenkins appeals both his conviction and sentence, arguing that: (1) inculpatory statements to police should have been suppressed as involuntary; (2) the prosecution made improper and prejudicial comments during closing argument; and (3) his 50-year term of imprisonment is excessive and must be reduced. We affirm.[1]

## ANALYSIS

### I. Motion to Suppress

Jenkins first argues that his initial statement to police should have been suppressed as involuntary because: (1) it was made shortly

---

[1]An extensive recitation of the facts leading to the shooting incident in this case is unnecessary in order to resolve the issues raised on review. Relevant facts will be discussed as needed.

afer his 3 a.m. arrest; (2) he did not sign a waiver of rights form; and (3) "a youth officer, parent, attorney or family member was not present when he first confessed." Jenkins does not argue that his subsequent statements to police were involuntary in and of themselves; rather, Jenkins argues that because his initial statement was involuntary, his subsequent statements to police should be suppressed as "fruit of a poisonous tree."

■ "As a general rule, this court will reverse a trial court's denial of a motion to suppress statements only if that ruling is manifestly erroneous. [Citation.] In this case, however, *de novo* review is appropriate, as neither the facts nor the credibility of the witnesses is at issue." *People v. Nielson*, 187 Ill. 2d 271, 286 (1999).

■ The "fruit of the poisonous tree" doctrine applies only where evidence is obtained in violation of a defendant's constitutional rights. *People v. Winsett*, 153 Ill. 2d 335, 353 (1992). Evidence discovered by virtue of a statement obtained in violation of a constitutional right must be suppressed. *Winsett*, 153 Ill. 2d at 353. A statement is obtained unconstitutionally where it is involuntary. *People v. Gonzalez*, 313 Ill. App. 3d 607, 615 (2000). Thus, in order to suppress Jenkins' subsequent statements, we must find not only that his initial statement to police was involuntary, but that Jenkins' subsequent statements were obtained "by virtue" of his initial statement. *Gonzalez*, 313 Ill. App. 3d at 615.

The record reflects that during a hearing on Jenkins' motion to suppress, the defense was granted leave of court to present its witnesses prior to the prosecution's. The defense first presented several of Jenkins' fellow gang members, all of whom offered substantially similar testimony to the effect that Jenkins had been drinking alcohol and smoking marijuana in their company until intoxicated the night before his 3 a.m. arrest on August 27, 2000.

Jenkins' cousin, Faye Jenkins, then testified that she received a telephone call from police around 3 a.m. on August 27, 2000, asking her to reach Jenkins' mother, Gloria Jenkins, who had no telephone. Faye stated that she then went to Gloria's apartment (in the same building) to inform Gloria of the call. Gloria accompanied Faye to Faye's apartment to return the call, did so, then left the apartment. Faye concluded that Gloria was intoxicated at the time based on Gloria's glazed eyes, slurred words and the smell of liquor on Gloria's breath.

Chicago police officer Timothy O'Brien then testified for the State. Officer O'Brien testified that when he arrested Jenkins and led him to a squad car around 3 a.m. on the morning of August 27, 2000, Officer O'Brien detected no odor of alcohol about Jenkins' person, nor did Jenkins' eyes appear bloodshot.

Believing Jenkins to be a juvenile, Officer O'Brien proceeded according to protocol and attempted to contact Jenkins' parents and inform them of their son's arrest. After knocking on the door to Jenkins' apartment and receiving no response, Officer O'Brien went to Faye's apartment. In the hall outside her apartment, Officer O'Brien informed Faye that Jenkins was being taken to Area Four police headquarters for questioning in a murder investigation. Officer O'Brien provided Faye with his name, star number and the headquarters telephone number and asked Faye to contact Jenkins' parents.

Officer O'Brien then returned to the squad car and informed Jenkins that he had just spoken to Faye. Officer O'Brien testified that it was at this point that Jenkins stated without being asked that "he knew why we were looking for him, he knew why we were there and that he knew the location of a weapon that we were looking for."[2] Jenkins then offered to lead Officer O'Brien and his partner, Officer Neil Schulz, to the weapon. When the officers allowed Jenkins to exit the squad car, Jenkins led them into an apartment building at 1170 West Erie Street, up to the ninth floor, into a utility closet/incinerator room and indicated that the gun could be found on top of an electrical junction box above the officers' line of sight. Officer O'Brien then reached up and ran his hand over the top of the junction box, causing a chrome-plated .380 semi-automatic pistol to fall to the floor. The pistol was later identified through ballistics analysis as the murder weapon.

Jenkins was then taken to Area Four police headquarters, transferred to investigating Detectives Alphonso Bautista and Paul Lopez and seated in a roll-call room. Around 4 a.m., an hour after Jenkins' arrest, Detectives Bautista and Lopez prepared to interview Jenkins. The detectives first advised Jenkins of his *Miranda* rights and informed Jenkins that he could be charged and tried as an adult despite his juvenile status. They then inquired as to the name and location of Jenkins' legal guardian. Jenkins responded that he understood each of his legal rights and told the detectives that his mother, Gloria Jenkins, was his legal guardian, although he did not know how she might be reached.

Detective Bautista testified that, at this point, he and Officer O'Brien were about to leave the roll-call room when Jenkins "said something to the effect of I know why I was picked up, I'll tell you what happened, something to those words, and proceeded to [relate the details of the shooting]." Essentially, Jenkins admitted to shooting repeatedly at two members of a rival gang. Neither Detective Bautista

[2]Jenkins does not argue that this statement should have been suppressed as involuntary.

nor Officer O'Brien asked Jenkins any direct questions once Jenkins began to speak about the shooting. Detective Bautista observed that Jenkins appeared saddened while relating these events, but was alert and provided detailed descriptions.

Following argument by counsel, the trial court ruled:

"I find that the defendant was not intoxicated. I find that the evidence supports the State's position. And I so find that he was coherent and was not intoxicated at the time of the giving of the statement.

I also find that initial contact with the defendant was not that of an interrogation, and I further find that statement was voluntarily made and that the police complied with the notification of the mother *** and therefore the motion to suppress the statements is respectfully denied."

We first note that Jenkins offers no authority to support his argument that Jenkins' failure to sign a waiver of rights form rendered his statement involuntary. This argument is thus waived. *People v. Ford*, 301 Ill. App. 3d 56, 59 (1998); 155 Ill. 2d R. 341(e)(7).

■ Our supreme court has dictated that in order to determine whether Jenkins' initial statement to Detective Bautista and Officer O'Brien was voluntary, this court must look to the totality of the circumstances. *In re G.O.*, 191 Ill. 2d 37, 54 (2000). Factors to consider include Jenkins' "age, intelligence, background, experience, mental capacity, education, and physical condition at the time of questioning; the legality and duration of the detention; the duration of the questioning; and any physical or mental abuse by police, including the existence of threats or promises." *G.O.*, 191 Ill. 2d at 54. No single factor is dispositive. *G.O.*, 191 Ill. 2d at 54. Whether Jenkins was able to confer with a "concerned adult," either before or during interrogation, may also be relevant to determining whether his confession was voluntary. *G.O.*, 191 Ill. 2d at 55. Predicated on consideration of these factors, the "test of voluntariness is whether [Jenkins] 'made the statement freely, voluntarily, and without compulsion or inducement of any sort, or whether [Jenkins'] will was overcome at the time he *** confessed.' " *G.O.*, 191 Ill. 2d at 54, quoting *People v. Gilliam*, 172 Ill. 2d 484, 500 (1996).

■ An examination of the record reveals that Jenkins was 16 years of age at the time of his arrest. The record also reflects that Jenkins had prior contact and experience with the justice system in the form of a previous felony arrest. Evidence adduced at the suppression hearing indicates that Jenkins was sober, alert and in no physical distress when he spoke with the police. Jenkins does not dispute the legality of his arrest, does not allege that the police made any threats to compel

or promises in return for his statement and does not claim to have been the victim of physical or mental abuse by police.

The duration and nature of the questioning also weigh in favor of a finding of voluntariness. Here, there was no questioning directed to the subject of Jenkins' confession. The record reflects that after advising Jenkins of his legal rights, Detective Bautista and Officer O'Brien asked Jenkins to identify his legal guardian and how she might be found. They also informed Jenkins that he could be charged and tried as an adult despite his juvenile status. Jenkins responded that he understood each of his legal rights and told the detectives that his mother, Gloria Jenkins, was his legal guardian, although he did not know how she might be reached.

Detective Bautista testified that at this point, he and Officer O'Brien asked Jenkins no further questions and were about to leave the roll-call room when Jenkins volunteered that he was aware of why he was picked up and proceeded to relate the details of the shooting. Jenkins then admitted to shooting repeatedly at two members of an opposing gang. Detective Bautista observed that Jenkins appeared saddened but alert, despite the early hour, and provided a detailed description of the circumstances surrounding the shooting.

In light of the one-sided balance of factors in this analysis, and because no single factor is dispositive (*G.O.*, 191 Ill. 2d at 54), the absence of Jenkins' mother or another "concerned adult" at the time Jenkins confessed is not alone sufficient to render Jenkins' confession involuntary. This is especially true where, as here, the police did not actively prevent Jenkins from contacting such an adult or vice versa. *G.O.*, 191 Ill. 2d at 55.

On the record presented, we conclude based on the totality of the circumstances that Jenkins' statement "was the result of his own decision and not the result of compulsion or his will being overborne." *G.O.*, 191 Ill. 2d at 57. Jenkins' initial statement was therefore voluntary, and the trial court did not err in denying Jenkins' motion to suppress. *People v. Nielson*, 187 Ill. 2d 271, 286 (1999). Because we find that Jenkins' initial statement to police was voluntary, we need not consider whether his subsequent statements were obtained "by virtue" of his initial statement. The "fruit of the poisonous tree" doctrine is inapplicable under the facts of this case. *People v. Winsett*, 153 Ill. 2d 335, 353 (1992); *People v. Gonzalez*, 313 Ill. App. 3d 607, 615 (2000).

## II. Improper Remarks

■ Jenkins next contends that he was denied a fair trial by improper prosecutorial comments. Jenkins first argues that "[d]uring

closing remarks, the prosecution asked the jury to consider the claim that Jenkins was 'smoking blunts.' While Jenkins admitted smoking pot and drinking alcohol, there was no evidence that he was smoking blunts." Jenkins has waived any objection to this comment where he neither objected at trial nor raised the issue in his posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Waiver aside, Jenkins' argument is without merit: "blunt" is a slang term for a hollowed-out cigar filled with marijuana. *People v. Brownlee*, 186 Ill. 2d 501, 507 (1999). No evidence was presented at trial with respect to the nature of Jenkins' marijuana use. Thus, the prosecutor's characterization of the specific form of that marijuana as a "blunt" exceeds the scope of the evidence presented at trial. However, because Jenkins would not have prevailed in its absence, this misrepresentation does not rise to the level of reversible error. *People v. Byron*, 164 Ill. 2d 279, 295 (1995); *People v. Chavez*, 327 Ill. App. 3d 18, 28 (2001).

■ Jenkins next argues that the State prejudiced Jenkins during rebuttal argument when the prosecutor: (1) accused defense counsel of trying to distract the jury by creating a "smoke screen"; (2) told the jury that Jenkins was pursuing a "defense of desperation"; and (3) told the jury that Jenkins was relying on the "hope that the jury would not follow the law."

Jenkins' third argument—that the prosecution told the jury that Jenkins was relying on the "hope that the jury would not follow the law"—is waived for failure to cite any supporting authority. *People v. Ford*, 301 Ill. App. 3d 56, 59 (1998); 155 Ill. 2d R. 341(e)(7).

As to Jenkins' remaining claims of error, we first note that it is well settled that prosecutorial comments either disparaging the integrity of defense counsel (*People v. Thompson*, 313 Ill. App. 3d 510, 514 (2000)) or accusing defense counsel of fabricating a defense (*People v. Hamilton*, 328 Ill. App. 3d 195, 204 (2002)) are improper. However, it is also axiomatic that prosecutors are:

> "afforded wide latitude in closing argument and may argue facts as well as reasonable inferences drawn from the evidence. *People v. Williams*, 192 Ill. 2d 548, 573, 736 N.E.2d 1001, 1015 (2000). In reviewing a challenge to remarks made by a prosecutor during closing argument, the comments must be considered in the context of the parties' closing arguments as a whole. Moreover, the reviewing court must indulge in every reasonable presumption that the trial court properly exercised its discretion in determining the propriety of the remarks. *People v. Simms*, 192 Ill. 2d 348, 397, 736 N.E.2d 1092, 1125 (2000)." *People v. Beler*, 327 Ill. App. 3d 829, 835 (2002).

"[T]he verdict must not be disturbed unless it can be said that the remarks resulted in substantial prejudice to the accused, such that

absent those remarks the verdict would have been different." *Byron*, 164 Ill. 2d at 295.

Jenkins cites to *People v. Kidd*, 147 Ill. 2d 510, 544 (1992), and *People v. Emerson*, 97 Ill. 2d 487, 497 (1983), for the proposition that the prosecution's reference to defense counsel's closing argument as a "smoke screen" constitutes reversible error. In *Beler*, however, the court addressed these cases and held that where a prosecutor described defense counsel's attempt to focus on minor inconsistencies in the case as a "smoke screen":

> "The prosecutor's remark did not disparage the integrity of the defense as did the extensive remarks at issue in *** *People v. Kidd*, 147 Ill. 2d 510, 544, 591 N.E.2d 431, 447 (1992) (in which 'the assistant State's Attorney did not make just one fleeting, inadvertent remark regarding this "smoke screen" metaphor. Rather, he commented *eight times* that defense counsel was "raising a smoke screen," or "filling this courtroom with smoke today," or "hoping that the smoke he raises in this room today will strangle the truth like it strangled the life of the ten children" ' (emphasis in original) who died in a fire set by defendant), and *People v. Emerson*, 97 Ill. 2d 487, 497, 455 N.E.2d 41, 45 (1983) (in which the prosecutor described the smoke screen as ' "composed of lies and misrepresentations and innuendoes" ' and said that 'all defense attorneys try to "dirty up the victim" ')." *Beler*, 327 Ill. App. 3d at 836.

The *Beler* court held that the prosecutor's remark was "properly made in response to defense counsel's closing argument" (*Beler*, 327 Ill. App. 3d at 836), and that no substantial prejudice to defendant resulted. *Byron*, 164 Ill. 2d at 295. See *People v. Hudson*, 157 Ill. 2d 401, 441 (1993) (holding that the State may respond to comments by defense counsel that clearly invite a response); *People v. Smith*, 154 Ill. App. 3d 837, 849 (1987) (finding prosecutor's comment that defense counsel had attempted to set up a "smoke screen" to be a proper response to defense counsel's closing argument).

The facts of the present case align squarely with those presented in *Beler*. In commenting on defense counsel's tactic of focusing on minor inconsistencies in the signatures on Jenkins' subsequent handwritten statement, the prosecutor stated: "It's a smoke screen, trying to get your attention off what's really going on." In response to defense counsel's objection, the trial court instructed the jury to "consider the evidence during the trial and not the words that the attorneys use to describe [it]." Taken in context, we find the prosecutor's comment to be an invited response to defense counsel's closing argument. *Beler*, 327 Ill. App. 3d at 836. As such, and in light of the trial court's corrective instruction to the jury, no substantial prejudice to

defendant resulted. *People v. Starks*, 287 Ill. App. 3d 1035, 1042 (1997); *People v. Suane*, 164 Ill. App. 3d 997, 1004-05 (1987).

Similarly, we cannot say that Jenkins was substantially prejudiced by the prosecutor's single comment that defense counsel's attack on the manner in which Jenkins' statement was recorded was a "defense of desperation." See *People v. Hamilton*, 328 Ill. App. 3d 195, 204 (2002) (expressing disapproval of use of phrase "defense of desperation" but finding no substantial prejudice to defendant).

## III. Sentencing

■ Finally, Jenkins argues that his 50-year sentence is excessive and must be reduced due to: (1) Jenkins' relative youth; and (2) the accidental nature of the shooting. However, we need not reach the substance of Jenkins' argument. Section 5—8—1(c) of the Unified Code of Corrections (730 ILCS 5/5—8—1(c) (West 1998)) requires that "[a] defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed within 30 days following the imposition of sentence." Although defense counsel made an oral motion for reconsideration of Jenkins' sentence, stating "I will supplement that with a written motion, hopefully later today," no such written motion appears in the record. Jenkins' sentencing challenge is therefore waived. *People v. Reed*, 177 Ill. 2d 389, 395 (1997).

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

McNULTY and COUSINS, JJ., concur.