2020 IL App (2d) 170844-U
No. 2-17-0844
Order filed April 14, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 10-CF-1525 |
| OSCAR OLIVA, a/k/a Oscar Oliva Adape, | ) ) ) | Honorable James C. Hallock, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Zenoff and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant showed no plain error in the State's closing argument, as the challenged remarks generally were not error, and in any event, the evidence was not closely balanced and any prejudice was minimal; but because the same act was the basis of the convictions of unlawful delivery of a controlled substance within 1000 feet of a public park and unlawful delivery of a controlled substance, the lesser offense was vacated.

¶ 2    After a jury trial, defendant, Oscar Oliva, a/k/a Oscar Oliva Adape, was convicted of unlawful delivery of a controlled substance within 1000 feet of a public park (720 ILCS 570/407(b)(1) (West 2010)) and unlawful delivery of a controlled substance (*id.* § 401(c)(2)). The trial court imposed a single sentence of six years' imprisonment. On appeal, defendant renews his

theory at trial that State misidentified him as the offender. He contends that (1) improper prosecutorial comments in closing argument denied him a fair trial and (2) his conviction of unlawful delivery of a controlled substance must be vacated. We affirm as modified.

¶ 3                                    I. BACKGROUND

¶ 4      At trial, Juan Carrillo, a Streamwood police detective, testified on direct examination as follows. On May 4, 2010, he was assisting the Carpentersville police in an undercover drug buy in which they would not arrest the seller that day, in hope of obtaining more information. At 8:30 p.m., he called (xxx) xxx-3886. A male answered and identified himself as "Oscar." Carrillo asked him if he had an "eight ball" (one eighth of an ounce) of cocaine for sale. Oscar told Carrillo that all the eight balls were already bagged for sale but that he could buy a quarter-ounce for $250. They discussed a possible sale and ended the call. About 9:50 p.m., Carrillo called back, spoke to Oscar, and told him that he had only $200. Oscar agreed to accept $200 that evening, if Carrillo paid him in full by the weekend. Oscar told Carrillo to go to the parking lot at 3010 Wakefield and call him once he arrived.

¶ 5      Carrillo testified that, before meeting Oscar, he attended a briefing led by detective James Schuldt. Carrillo received $200 in advance funds. He was also shown a photograph of a person identified as "Oscar Oliva," taken after a previous arrest. At 10:20 p.m. Carrillo was in the parking lot at 3010 Wakefield, alone in an undercover vehicle. He called Oscar. Oscar said that Carrillo must pay $250. The conversation ended. Two minutes later, Oscar called back. Carrillo asked whether he would be there by himself. Oscar said that his cousin would come along.

¶ 6      Carrillo testified that at about 10:26 p.m., two men approached on foot. In court, he identified defendant as one of the men and testified that the other man was Luis Marin. As Marin approached the vehicle, Carrillo recognized him because he had arrested him in Streamwood on

an unrelated matter. He was afraid that Marin would recognize him. Defendant entered the vehicle and sat in the front passenger seat. Marin entered and sat behind Carrillo. Defendant handed Carrillo a clear plastic bag containing a white powdery substance. Carrillo gave defendant $200. Carrillo told defendant that he worked at the Walmart in Streamwood. Defendant said that he was looking for a job. Carrillo asked for his name. Defendant said "Oscar." He and Marin exited the car and and remained in the parking lot as Carrillo drove away.

¶ 7 Carrillo testified that next he met up with Schuldt and handed him the bag. Carrillo identified the man who had sold it to him as the person in the photograph at the briefing. After May 4, 2010, Carrillo had no more involvement with defendant, as Marin or someone else might recognize him.

¶ 8 Carrillo testified on cross-examination as follows. He did not know to whom the number (xxx) xxx-3886 had belonged on May 4, 2010. He did not "ping" the number to determine the phone's location. Carrillo did not record his phone conversations with Oscar or the transaction. The surveillance van arrived in the parking lot before Carrillo and was in the third spot from his vehicle's driver's side. Detectives Stankowitz, Taylor, and Bognetti were in the van. Defendant and Marin were in Carrillo's vehicle for approximately three minutes. To Carrillo's knowledge, the advance funds were never recovered, there was no follow-up meeting with Oscar, and the police never learned the source of the cocaine. They did not find any other suspects based on the transaction.

¶ 9 On redirect, Carrillo testified that there had been no reason to ping Oscar's number, because he dealt with him in person and did not need to learn from where he had called. Defendant chose the location of the deal and to bring an associate along.

¶ 10    Detective Schuldt testified on as follows. At the briefing before the buy, he showed Carrillo a photograph of Oscar Oliva. The photograph was admitted into evidence at trial. He parked away from the scene of the transaction. After the buy, he met with Carrillo and the surveillance officers. Schuldt received the plastic bag, field tested and weighed the substance, and eventually put the bag and its contents into evidence. Later, Schuldt returned to the scene of the buy and ascertained that it was 850-900 feet from the park at the Boys and Girls Club.

¶ 11    Schuldt testified that, on June 23, 2010, he arrested a person whom he identified at trial as defendant. He also testified that the photograph of Oscar Oliva was that of the arrestee. Defendant had a cell phone, which was taken into evidence. Schuldt did not know its number.

¶ 12    Joseph Gutierrez, a Carpentersville police detective, testified that he analyzed the phone to ascertain its number but did not succeed.

¶ 13    Chris Bognetti, a surveillance detective, testified on direct examination as follows. At the briefing, he was shown the photograph of Oscar Oliva and told that Oliva was the target. The surveillance team parked two spaces over from where Carrillo parked. It was dark, but there were overhead lights and the view of Carrillo's car was unobstructed. At approximately 10:26 p.m., two men approached Carrillo's car; from the photograph, Bognetti recognized one of them as Oscar Oliva. In court, Bognetti identified defendant as the person who sat in front with Carrillo. Bognetti recognized his associate as Marin, based on a prior source.

¶ 14    Bognetti testified on cross-examination as follows. The surveillance officers sat in the back of the van. They used binoculars at times as needed. They could not hear what transpired and did not videotape or photograph the scene, as that might have given them away. The van's windows remained closed. He could not see the transaction itself, as he saw the participants only as far down as their shoulders.

¶ 15    Kevin Stankowitz, a surveillance detective, testified as follows.  At the briefing, he viewed the photo of Oscar Oliva.  In the parking lot, which had artificial lighting, he had an unobstructed view of the men who approached Carrillo's vehicle.  He recognized Oliva as the one who sat in front.  In court, he identified defendant as this man.  The surveillance van's windows were closed, and there was no video recording equipment in the van.

¶ 16    The parties stipulated that the property at the Boys and Girls Club was a public park.

¶ 17    Edward McGill, a forensic scientist for the state police, testified that, on June 2, 2010, he tested the bag holding the white powdery substance.  The substance weighed approximately 2.6 grams and contained cocaine.

¶ 18    The State rested.  Defendant put on no evidence.

¶ 19    In closing argument, the first prosecutor began, "The question in this case for you to decide is, is there enough evidence to convict the defendant.  It is not could there be more evidence to convict the defendant and that's an important distinction."  Noting that a common defense tactic, "could there be more evidence[?]" had been "riddled throughout this case," he commented, "that's kind of a cheap tactic because there can always be more evidence."  Defendant used this tactic "to distract [the jury] from what actually [was] the evidence in this case," in particular that three officers had positively identified defendant.

¶ 20    The prosecutor continued, "[W]hat you need to focus on is not what the evidence could have been, but what the evidence is and whether that is enough."  The three identifications were "more than enough to convict this defendant."  He then quoted the jury instruction on the elements of the more serious offense, including, "If you find from your consideration of all of the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find

the defendant guilty. If you find *** that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 21    After recounting the undisputed issues, the prosecutor focused on identity: "[t]he contested issue that the defendant is going to raise." He told the jury, "don't ask yourself, could there have been more, because that's an unfair question. You ask yourself, you actually look at the evidence that is there and you say, is it enough." The prosecutor noted that Carrillo and the surveillance officers had viewed a photo of Oscar Oliva and then observed the seller up close for three minutes. Further, they all had testified unequivocally that defendant was the person who delivered the cocaine, and, shortly after the transaction, they also identified the man in the photo as that person.

¶ 22    The prosecutor returned to the anticipated defense argument that "there could have been more *** there could have been video, there could have been audio." He reiterated that "identification, eyewitness testimony is enough." Further, he told the jury:

"[P]ut yourself in the shoes of the undercover officer *** this is early in the investigation. *** [P]ut yourself in the shoes of the officer again—he's in the front seat. He learns that another person is coming to this buy. Oh no, that's a little scary, right.

       *** And if I'm that officer, if you're that officer, aren't you thank God [*sic*] we don't have wires all over this car. Aren't you thank God [*sic*] we don't have a camera sitting on the dashboard."

¶ 23    Finally on this matter, the prosecutor stated, "And then there is [*sic*] limitations to technology, too. I have done this for a while. I have never had a video where somebody didn't have to come in and at least say that is that individual. So you still need an eyewitness identification to say who that individual is on the video." The same was true for a recording. But

Carrillo had "voice recognition": he knew that the man in the front seat was the one he had spoken to on the phone. The prosecutor continued:

"What has facial recognition and can recognize instantaneously, that officer. And opposite [*sic*] of that I would argue that this officer also has [*sic*] moral compass. He's not going to come in here and lie to you. He is going to try and get the right guy, try to get the drug dealer convicted of this offense, and so he is going to come in and tell you the truth and so that is enough." Thus, the prosecutor reiterated, video and audio technology would have mattered little in this case.

¶ 24 The prosecutor concluded, "And so, when you look at this case, when you ask the question, is there enough, and you don't fall under [*sic*] the trap of asking the question that could always be there, could there be more, you will find that there is enough in this case."

¶ 25 Defendant did not object to any of the foregoing comments.

¶ 26 In his closing argument, defendant began, "This case stretches the bounds of what is beyond a reasonable doubt because that is the standard that you have to use when you go back and deliberate." Further, he noted, "[The prosecutor] didn't even use this language. He said, there is enough. Enough for what? Enough for you? Enough for you? Enough for who?" But that was "not the legal standard that [the jury would be] using."

¶ 27 Defendant next noted that there were "a lot of things missing" from the case: audio recordings, video recordings, fingerprint evidence, and information about the number that Carrillo called. Defendant attacked the identification evidence, stressing the seven-year interval between the transaction and the trial and the lack of corroboration. He reiterated that the State had the burden to prove defendant guilty beyond a reasonable doubt and had not done so.

¶ 28 In rebuttal, the second prosecutor began, "Beyond a reasonable doubt is a just verdict. We recognize it and accept it." Shortly afterward, he said, "When the officers came and testified, was there any reasonable doubt in their minds the way that they testified that it was this defendant on May 4th of 2010? No, absolutely not." Defendant did not object. Ending his rebuttal, the second prosecutor stated, "We have proven beyond a reasonable doubt that it was this defendant."

¶ 29 The jury found defendant guilty of both charges. In his motion for a new trial, defendant contended in part that, in its closing argument, the State had tried to diminish its burden of proof by repeatedly telling the jury that the evidence was "enough" to prove defendant guilty. Defendant raised no other claim of error in the State's closing argument. The trial court denied the motion. The court explained in part that the first prosecutor had quoted the elements instruction, which stated the reasonable-doubt standard. Telling the jury that the evidence was "enough" to convict was not inconsistent with this standard.

¶ 30 On October 18, 2017, after a hearing, the trial court entered two judgment orders. The first stated that defendant was guilty of the more serious charge but omitted any reference to the lesser offense. It sentenced defendant to six years' imprisonment. The second stated that defendant was guilty of both offenses but was sentenced to a single six-year prison term. Defendant file a timely notice of appeal.

¶ 31                                          II. ANALYSIS

¶ 32 On appeal, defendant contends first that improper prosecutorial comment in closing and rebuttal closing argument denied him a fair trial. He cites the following: (1) the first prosecutor's repeated statements that the evidence was "enough"; (2) the characterization of defendant's argument as a "cheap tactic" to "distract" the jury; (3) the request that the jurors put themselves "in the shoes" of Carrillo; (4) the first prosecutor's statement that, based on his having "done this

for a while," a videotape of the transaction would not have made much difference; (5) the statement that Carrillo had a "moral compass" that prevented him from making a false identification of the seller; and (6) the second prosecutor's assertion that the officers had "[no] reasonable doubt in their minds the way that they testified that it was this defendant on May 4th of 2010."

¶ 33    Defendant did not object to any of these remarks, and his posttrial motion challenged only the comments that the evidence was "enough." As a result, he acknowledges, he has forfeited his claim of error. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, he argues that the issue can be reviewed for plain error, because the evidence was closely balanced. See *People v. Herron*, 215 Ill. 2d 167, 178 (2005). We disagree. The evidence was not closely balanced, most of the remarks were not improper, and any prejudice was minimal.

¶ 34    Defendant contends that the proof of identity hinged on the three officers' in-court identifications approximately seven years after the transaction. He notes that the transaction took place in a few minutes under artificial light. Defendant emphasizes the absence of corroborating evidence such as fingerprints, videotape, or information tying the cell phone number to him.

¶ 35    We reject defendant's assessment thar the evidence was closely balanced. Even if the three positive in-court identifications by themselves left this a close case, there was more. Immediately before driving to the parking lot, Carrillo, Bognetti, and Stankowitz all viewed the photograph of Oscar Oliva. When the two men entered Carrillo's car, all three officers recognized one as the Oscar Oliva in the photograph. At trial, defendant did not dispute that he was the man in the photograph. Thus, there were both in-court identifications and near-contemporaneous out-of-court identifications. The officers' observations of the seller for three minutes at very close range (Carrillo) and close range with an unobstructed view (Bognetti and Stankowitz) amply supported

the out-of-court identifications. Because the evidence was not closely balanced, plain error does not apply.

¶ 36    Further, even disregarding forfeiture, we conclude that most of the challenged remarks were not improper. We note that in general, a prosecutor has wide latitude in closing argument. *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007). "A closing argument must be viewed in its entirety, and the challenged remarks must be viewed in their context." *People v. Glasper*, 234 Ill. 2d 173, 204 (2009).

¶ 37    Defendant contends that the State's numerous comments that the evidence was "enough" to convict defendant were an improper attempt to minimize its burden to prove his guilt beyond a reasonable doubt. See *People v. Moore*, 171 Ill. 2d 74, 103-04 (1996). We disagree. Viewed in context, the statements were a preemptive response to the anticipated defense argument that too much inculpatory evidence (such as fingerprints and recordings), was absent from the State's case. The first prosecutor did not argue that the State's burden was less than proof beyond a reasonable doubt and, indeed, he recited that standard in quoting the instruction that the jury would receive. Thus, the argument was simply that there was "enough" evidence to prove defendant guilty beyond a reasonable doubt.

¶ 38    Further, in his closing argument, defendant repeatedly reminded the jury that the State's burden was proof beyond a reasonable doubt. In rebuttal closing argument, the second prosecutor explicitly agreed. Finally, the trial court instructed the jury that the State's burden was proof beyond a reasonable doubt. Thus, the "enough" comments were neither improper nor prejudicial.

¶ 39    Defendant next argues that the characterization of his anticipated argument as a "cheap" tactic to "distract" the jury was an improper attempt to disparage the integrity of defense counsel or accuse defense counsel of fabricating a defense. See *People v. Jenkins*, 333 Ill. App. 3d 534,

540 (2002). We disagree, as a prosecutor may use harsh language in responding to defense tactics that unduly emphasize minor defects in the State's evidence (*id.* at 541-42). Moreover, if the reference to an " 'old trick' " (*People v. Gonzalez*, 388 Ill. App. 3d 566, 590 (2008) or a " 'smoke screen' " (*Jenkins*, 333 Ill. App. 3d at 541)) is isolated or limited, it will not be deemed prejudicial. Here, although the first prosecutor's characterization of defendant's defense as a cheap tactic was anticipatory and not responsive, it was not significantly different in character or duration from those in *Jenkins* and *Gonzalez*. The better course is not to make such remarks.

¶ 40    Defendant next argues that the first prosecutor's request that the jurors put themselves "in the shoes of" Carrillo was akin to an improper request that jurors identify with the alleged victim (see *People v. Spreitzer*, 123 Ill. 2d 1, 38 (1988)), and he argues that the remark improperly invited the jury to empathize with Carrillo and his fear of danger at the scene. We do not agree. Viewed in context, the remarks anticipated defendant's argument (foreshadowed by his cross-examinations) that the State's case was weak because there was no recording of the transaction. The thrust of the remarks was that the absence of a recording was unremarkable because taping the transaction would have endangered Carrillo. To the extent that the comment can be construed as an appeal to empathy, it was secondary.

¶ 41    Defendant next argues that the first prosecutor's remark, "I have done this for a while" amounted to improperly telling the jury that, based on his experience, which was not in evidence, a witness was telling the truth. See *People v. Williams*, 2015 IL App (1st), 122745, ¶ 19; *People v. Schaefer*, 217 Ill. App. 3d 666, 669 (1991). We disagree. The first prosecutor was not vouching for a witness or attempting to state facts not in evidence. He was stating the evidentiary rule, which he knew from experience, that a recording still requires a witness to testify to its foundation. This

rule was pertinent to the anticipated argument by defendant that the absence of a videotape was a serious weakness in the State's case.

¶ 42    Defendant next argues that the first prosecutor's statement that Carrillo had "a moral compass" improperly assured the jury that he had identified the perpetrator correctly. We agree with defendant that this remark was improper. A prosecutor may not argue that a witness is more credible merely because he is a police officer and may not express his personal belief that a witness is credible. *People v. Fields*, 258 Ill. App. 3d 912, 921 (1994).

¶ 43    Finally, we address the second prosecutor's rhetorical question, "[W]as there any reasonable doubt in [the three officers'] minds the way that they testified that it was this defendant ***?" Defendant argues that the second prosecutor was improperly vouching for the credibility of the officers by telling the jury that they must be credited because they did not believe that they had misidentified defendant. We disagree. The prosecutor was doing no more than pointing out that the officers' identification testimony had been positive and unequivocal; they had not qualified their identifications.

¶ 44    In sum, only one of the challenged remarks, the reference to Carrillo's "moral compass," was plainly improper, and it was isolated. Even disregarding forfeiture, defendant was not denied a fair trial.

¶ 45    Defendant contends that the judgment must be modified to state that he was convicted only of unlawful delivery of a controlled substance within 1000 feet of a public park and not of simple unlawful delivery of a controlled substance as well. Defendant correctly notes that one act will support the conviction of only one crime (*People v. Harvey*, 211 Ill. 2d 368, 389 (2004)) and that, if more than one conviction is based on the same act, the less serious conviction must be vacated (*People v. Artis*, 232 Ill. 2d 156, 170 (2009)). The two "judgment order[s]" entered October 18,

2017, are inconsistent. The second one is improper. Therefore, we modify that order by striking the reference to simple unlawful delivery. In all other respects, the judgment is affirmed.

¶ 46                                    III. CONCLUSION

¶ 47    For the reasons stated, we affirm as modified the judgment of the circuit court of Kane County.

¶ 48    Affirmed as modified.