2016 IL App (1st) 133286
No. 1-13-3286
June 21, 2016

SECOND DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court Of Cook County. |
| | ) | |
| Respondent-Appellee, | ) | |
| | ) | No. 98 CR 25095 |
| v. | ) | |
| | ) | |
| MARCUS JENKINS, | ) | The Honorable |
| | ) | James Michael Obbish, |
| Petitioner-Appellant. | ) | Judge Presiding. |

JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Presiding Justice Pierce and Justice Simon concurred in the judgment and opinion.

**OPINION**

¶ 1     When a postconviction petition leads to resentencing, does a new petition filed after the resentencing count as an initial postconviction petition, or should courts treat it as a successive postconviction petition, which a petitioner has no right to file unless he can show cause and prejudice? We hold that the court should treat the petition as an initial postconviction petition, which the petitioner has a right to file, and which the trial court should dismiss only if the petitioner fails to state the gist of a claim for a deprivation of his constitutional rights. We find that Marcus Jenkins' postconviction petition states the gist of a

constitutional claim, so we reverse the dismissal of the petition and remand for further proceedings.

¶ 2                                                    BACKGROUND

¶ 3        On August 26, 1998, Marcus Jenkins, then 16 years old and a member of the Gangster Disciples, walked home from school with Ricky Hamilton, a member of the Milwaukee Kings, and another boy. On the way home, on a busy street, they encountered David Stopka of the Spanish Cobras and Omar Negron of the Ashland Vikings, who were at war with Hamilton's gang. In the course of the encounter, a stray bullet killed Edna DeLaRosa. Police arrested Jenkins the next day.

¶ 4        Jenkins spoke to an assistant State's Attorney at the police station and signed a handwritten statement about the shooting. According to the handwritten statement, Hamilton traded insults with Stopka and Negron. Hamilton then handed Jenkins a gun and told him to shoot Stopka and Negron. Jenkins "fired the gun at the two guys before they were able to get guns and come back and shoot at him and Ricky." All the boys ran from the scene. Jenkins followed Ricky as they ran through an alley. At the end of the alley he turned and saw Stopka, about 15 feet away, holding a bat. Jenkins fired the gun and ran off.

¶ 5        Prosecutors charged Jenkins with first degree murder. A trial held in 2000 ended with a hung jury. At the retrial, Detective Alfonso Bautista testified that, at the police station the day after the shooting, Jenkins told Bautista that Jenkins had problems at school with members of rival gangs. He brought a gun to school on August 26, 1998, and left it outside the school. He retrieved it before he started to head for home. He handed the gun to Hamilton when

Hamilton asked for it, but then Hamilton handed it back and told Jenkins to shoot. Jenkins admitted that he later fired the fatal bullet.

¶ 6 Negron testified about the gang rivalries and the encounter with Hamilton and Jenkins on August 26, 1998. When he saw Hamilton holding the gun, he and Stopka ran, and he heard shots as he ran. He and Stopka saw Hamilton and Jenkins again a few blocks away. Stopka picked up a bat and Negron held a bottle. Hamilton ran away from Stopka and Negron, and Stopka chased him wielding the bat. Negron heard more shots.

¶ 7 The trial record shows that defense counsel did not object to the State's instructions and did not offer any additional instructions.

¶ 8 During deliberations, the jury sent the judge a note to tell the judge that the jury could not reach a unanimous verdict. The judge told the jurors to continue deliberating. After five hours of deliberations, the jurors sent a second note with much the same message. The judge sequestered the jurors overnight. The next day, the jury reached unanimity, finding Jenkins guilty of first degree murder. The court sentenced Jenkins to 50 years in prison. The appellate court affirmed the judgment. *People v. Jenkins*, 333 Ill. App. 3d 534, 542 (2002).

¶ 9 Jenkins filed a postconviction petition in 2003. The trial court granted the petition and the State appealed. *People v. Jenkins*, No. 1-09-1377 (2010) (unpublished order under Supreme Court Rule 23). In 2009, before the appellate court decided the appeal, Jenkins sought leave to file a second postconviction petition. The trial court denied Jenkins' request. The appellate court affirmed the trial court's decision to grant the initial postconviction petition. *Id.* On March 8, 2012, the proceedings following the appellate court's remand of the postconviction

petition filed in 2003 ended with the trial court imposing on Jenkins a sentence reduced to 33 years in prison.

¶ 10       About a year after the court imposed the new sentence, Jenkins filed the postconviction petition at issue in this appeal. He titled the document "Successive Petition for Post Conviction Relief" and appended it to a motion for leave to file a successive postconviction petition. He alleged that his trial counsel provided ineffective assistance by failing to request a jury instruction on second degree murder. Jenkins supported his petition with a jury instruction and affidavits from his trial counsel and the attorney who helped Jenkins in the proceedings on his 2003 postconviction petition.

¶ 11       The postconviction attorney said she found the jury instruction in trial counsel's file and she asked trial counsel to explain the handwritten notes on the instruction. The trial attorney acknowledged that he apparently wrote the notes, which said, "Δ wants 2nd ° MURDER" and "OBJ." Trial counsel said in his affidavit that he did not remember the instructions conference and he did not have access to the trial transcript, but his "best guess *** [was] that the defense asked that the court instruct the jury as to the *** offense of second degree murder, and that the court refused this request. This would seem to explain why the defense objected to this instruction as it appears." Jenkins also appended to his petition enough of the trial transcript to show that trial counsel did not object to any of the State's instructions and trial counsel did not offer any instructions.

¶ 12       The trial court denied Jenkins leave to file the petition. Jenkins now appeals.

¶ 13                                    ANALYSIS

¶ 14        With counsel appointed to assist Jenkins with his appeal, Jenkins now argues that the petition he filed counts as his first postconviction challenge to the judgment entered on March 8, 2012, and therefore he did not need leave of the court to file the petition. Jenkins also argues that because he adequately stated the gist of a claim for ineffective assistance of counsel, the trial court should have advanced the petition to the second stage of postconviction proceedings. In the alternative, he argues that his petition met the cause and prejudice test for filing a successive postconviction petition.

¶ 15                            Initial or Successive Petition

¶ 16        We first address Jenkins' argument that he had a right to file his initial postconviction petition challenging the 2012 judgment. Section 122-1 of the Post-Conviction Hearing Act (Act) provides:

> "A proceeding under [the Act] may be commenced within a reasonable period of time after the person's conviction notwithstanding any other provisions of this Article. ***

> * * *

> *** Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." 725 ILCS 5/122-1(a-5), (f) (West 2012).

¶ 17        Our supreme court explained, "as used in the Post-Conviction Hearing Act, the word 'conviction' is a term of art which means a final judgment that includes both a conviction *and* a sentence." (Emphasis in original.) *People v. Hager*, 202 Ill. 2d 143, 149 (2002). Illinois courts rely on federal "*habeas* case law in interpreting and applying the Act." *People v. Hodges*, 234 Ill. 2d 1, 12 (2009). Federal *habeas* law similarly restricts the right of a defendant to file successive challenges to a conviction. *Magwood v. Patterson*, 561 U.S. 320, 330-31 (2010).

¶ 18        In *Magwood*, Magwood used an application for a writ of *habeas corpus* to challenge both a finding of guilt and the sentence imposed on him. The federal court granted the writ, and the proceedings led the state court to hold a new sentencing hearing. Following the imposition of a new sentence, Magwood again applied for a writ of *habeas corpus*, and the district court again granted the writ. The United States Court of Appeals for the Eleventh Circuit reversed the district court's judgment, holding that Magwood's petition did not meet the stringent criteria for a "second or successive" petition for a writ of *habeas corpus*. *Magwood*, 561 U.S. at 329.

¶ 19        The Supreme Court reversed the Eleventh Circuit's decision and reinstated the district court's judgment. The *Magwood* court said:

>        "According to Magwood, his 1986 resentencing led to a new judgment, and his first application challenging that new judgment cannot be 'second or successive' ***. We agree.
>
>            ***

> We have described the phrase 'second or successive' as a 'term of art.' ***
> [B]oth [the statute's] text and the relief it provides indicate that the phrase
> 'second or successive' must be interpreted with respect to the judgment
> challenged.
>
> * * *
>
> *** [T]he existence of a new judgment is dispositive." *Magwood*, 561 U.S. at
> 331-38.

¶ 20    The State argues that we should adopt as Illinois law *dicta* in a footnote in a federal opinion. In *Walker v. Roth*, 133 F.3d 454 (7th Cir. 1997), decided more than a decade before *Magwood*, Walker obtained postconviction relief, and the trial court imposed a new sentence. Walker then petitioned again for postconviction relief, attacking only the new sentence. The *Walker* court found that the new petition qualified as an initial postconviction petition, but in a footnote the court said, "[o]f course, had Walker sought to challenge aspects of his conviction the district court would have been correct in dismissing his petition as successive." *Walker*, 133 F.3d at 455 n.1. We find that *Magwood*, not *Walker*, correctly states the applicable law.

¶ 21    The trial court entered a new judgment against Jenkins when it resentenced him in 2012. Jenkins first filed a postjudgment challenge to the 2012 judgment in 2013 when he filed the document he labeled "Successive Petition for Post Conviction Relief." The State argues that because Jenkins so labeled the petition, he cannot contest the trial court's decision to treat the petition as a successive postconviction petition. We find this case similar to *People v. Smith*, 386 Ill. App. 3d 473 (2008). Smith sought to challenge his conviction, and he labeled his

7

request as a petition under section 2-1401 of the Code of Civil Procedure. 735 ILCS 5/2-1401 (West 2006). The trial court dismissed the petition, finding that Smith did not meet the time constraints for a 2-1401 petition. The appellate court held:

> "It has long been recognized that a lack of legal knowledge might cause a *pro se* prisoner to select the wrong method to collaterally attack his conviction.
>
> * * *
>
> A *pro se* defendant is not necessarily master of his claim, and the court may override his choice of procedural vehicle by which to seek relief. [Citation.] Where a *pro se* defendant files a pleading alleging a deprivation of a constitutional right cognizable under the Act, the trial court may recharacterize it as a postconviction petition and the petition may be recharacterized even if it is clearly labeled as another type of pleading. [Citation.] A pleading is not determined by the label applied to it by the defendant, but by its content and character. [Citation.] Recharacterizing a petition protects a *pro se* litigant from the possible harsh result arising from his lack of legal knowledge in selecting a method to attack his conviction ***." *Smith*, 386 Ill. App. 3d at 476-78.

¶ 22 We recognize that our supreme court rejected part of the reasoning of *Smith* and held that a trial court has no duty to recharacterize a *pro se* litigant's petition if the *pro se* litigant chooses the wrong legal form for his petition. *People v. Stoffel*, 239 Ill. 2d 314, 324 (2010). But here, Jenkins properly labeled his petition as a petition brought under the Act. He only failed to recognize that, because of the intervening judgment, his petition counted as an initial postconviction petition. The court, and not the *pro se* petitioner, should bear responsibility

for finding and recognizing the import of *Hager* and *Magwood*. The trial court erred when it failed to recognize that Jenkins first challenged the judgment entered in 2012 when he filed his petition in 2013 and that under the Act Jenkins had a right to file the petition challenging the 2012 judgment without leave of the court.

¶ 23                                    Ineffective Assistance of Counsel

¶ 24        Jenkins argues that he adequately stated a claim that his trial counsel provided ineffective assistance because counsel failed to request an instruction on second degree murder. We review the dismissal of Jenkins' petition under the standard stated in *Hodges*, 234 Ill. 2d at 17:

> "To prevail on a claim of ineffective assistance *** a defendant must show both that counsel's performance 'fell below an objective standard of reasonableness' and that the deficient performance prejudiced the defense. [Citation.] At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced."

¶ 25        The State argues that the affidavit of Jenkins' trial counsel defeats his claim for ineffective assistance. The attorney said his "best guess," without seeing the transcript and with no memory of the instructions conference, was that he requested an instruction on second degree murder and the trial court denied the request. Because the transcript shows no such request, the State concludes that the attorney must have requested the instruction in a conference in chambers and not on the record. But if that were the case, then counsel's

9

performance fell below an objective standard of reasonableness when he failed to put the request for the instruction on the record, so that appellate counsel could decide whether to raise the issue as grounds for reversal of the judgment.

¶ 26       The State also suggests that counsel performed adequately because the trial court would not have used the instruction if counsel had offered it. But Negron testified that he saw Hamilton run away, unarmed, and he saw Stopka, wielding a bat, run after Hamilton, right before he heard the fatal shots. Jenkins admitted in his statement that he shot at Stopka when he saw Stopka, about 15 feet away, holding a bat. The evidence could support a finding that Jenkins shot at Stopka based on an unreasonable belief that he needed to shoot to protect Hamilton.

¶ 27       We see no strategic purpose for the failure to request the instruction on second degree murder. The jury would need to find all the elements of first degree murder before it would consider the second degree murder instruction, so the instruction would not jeopardize Jenkins' interests. See *People v. Wilmington*, 2013 IL 112938, ¶¶ 48, 50; *People v. Bell*, 152 Ill. App. 3d 1007, 1015 (1987). Trial counsel, in his affidavit, offered no explanation for the decision not to request the instruction. We find that counsel's performance arguably fell below an objective standard of reasonableness when he failed to request an instruction on second degree murder. See *Bell*, 152 Ill. App. 3d at 1015.

¶ 28       Next, we must determine whether the record might, arguably, support a finding that Jenkins suffered prejudice due to counsel's arguable error. We have already noted that the evidence could support a finding of second degree murder. Moreover, two different juries found this case very difficult to decide. The first trial ended with a hung jury, and the second

trial ended only after the jury sent the judge two notes stating that the jurors could not reach a unanimous verdict. Some jurors may have believed that Jenkins' acts in defense of Hamilton mitigated his guilt, and on that basis they had trouble finding him guilty of first degree murder. The jury may have accepted the option of second degree murder if the court had offered it. Accordingly, we find that Jenkins has stated the gist of a claim that his conviction resulted in part from a denial of his constitutional right to the effective assistance of counsel.

¶ 29                                               CONCLUSION

¶ 30        The document labeled "Successive Petition for Post Conviction Relief" qualified as an initial postconviction petition, which Jenkins had a right to file without leave of the trial court. Jenkins adequately alleged facts to support a claim that his trial counsel provided ineffective assistance when counsel failed to request an instruction on second degree murder. We reverse the order dismissing the petition and we remand for further proceedings on the postconviction petition.

¶ 31        Reversed and remanded.