NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190731-U

NO. 4-19-0731

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 28, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| DEMECO D. HILL, | ) | No. 11CF1257 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court reversed the trial court's judgment because the trial court did not properly consider defendant's petition for postconviction relief.

¶ 2   In January 2014, a jury found defendant, Demeco D. Hill, guilty of the offense of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2010)). The trial court sentenced defendant to 25 years in prison. This court affirmed defendant's conviction on direct appeal. *People v. Hill*, 2017 IL App (4th) 140888-U.

¶ 3   In April 2016, defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure. 735 ILCS 5/2-1401 (West 2014). The trial court dismissed the petition as meritless. On appeal, defendant argued the trial court erred by dismissing the petition. The State responded that defendant failed to properly serve it and the court never acquired personal jurisdiction. At the State's request, this court modified the dismissal to indicate

that it was without prejudice due to defendant's failure to serve the State and otherwise affirmed the trial court's judgment as modified. *People v. Hill*, No. 4-16-0500 (2019) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 4        On remand, the trial court entered an order recharacterizing the 2-1401 petition as a postconviction petition and instructing defendant to file any additional grounds for postconviction relief. In response, defendant filed a motion to reconsider, requesting that the court consider the petition under section 2-1401 and not as a postconviction petition. Defendant also filed a motion to supplement the recharacterized postconviction petition, alleging several constitutional violations. The court granted the motion to reconsider and proceeded pursuant to section 2-1401. The court also granted defendant's motion to supplement.

¶ 5        The State filed an answer, a motion to dismiss, and a motion for summary judgment. The only issues addressed by the State in its pleadings were those raised in defendant's original 2-1401 petition. In June 2019, the trial court granted the State's motion to dismiss.

¶ 6        Defendant subsequently filed motions requesting the trial court address his postconviction petition. (We note that defendant had not filed a separate postconviction petition but instead believed his motion to supplement was a freestanding postconviction petition.) The court denied the motions, and in August 2019, the court entered an order stating that it had considered the postconviction issues to be a part of the 2-1401 petition. The court concluded it had ruled on defendant's postconviction claims because it had denied his 2-1401 petition.

¶ 7        Defendant appeals, arguing the trial court erred by (1) failing to act on the postconviction petition within 90 days, (2) applying the wrong standard for dismissal, and (3) denying defendant leave to file his postconviction petition. We agree that the manner in which the trial court denied defendant's postconviction claims was improper. Accordingly, we reverse the

trial court's judgment and remand for further proceedings.

¶ 8                                   I. BACKGROUND

¶ 9                           A. The Trial and Direct Appeal

¶ 10        In January 2014, a jury found defendant guilty of the offense of being an armed habitual criminal. 720 ILCS 5/24-1.7(a) (West 2010). Defendant was convicted in part because of DNA evidence connecting him to a firearm. In March 2014, the trial court sentenced defendant to 25 years in prison. This court affirmed defendant's conviction on direct appeal. *People v. Hill*, 2017 IL App (4th) 140888-U.

¶ 11                           B. The Section 2-1401 Petition

¶ 12        In April 2016, defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure. 735 ILCS 5/2-1401 (West 2014). In his petition, defendant argued he was entitled to a new trial based on a subsequently issued DNA report and allegedly recanted testimony. Defendant's certificate of service indicated he attempted to serve the State by regular mail. The State never appeared or participated in any proceedings on the petition. In May 2016, the trial court entered an order dismissing defendant's petition on the merits.

¶ 13        On appeal, this court agreed with the State that the trial court's dismissal on the merits was improper because the State had not been properly served. *People v. Hill*, No. 4-16-0500 (2019) (unpublished summary order under Illinois Supreme Court Rule 23(c)). Because the State had not been served and did not appear, the trial court lacked personal jurisdiction. Accordingly, we affirmed the court's judgment but " 'modif[ied] the court's order to reflect that defendant's petition was dismissed, without prejudice, on the grounds that defendant's failure to serve the State by certified mail deprived the court of personal jurisdiction.' " *Id.* (quoting *People v. Smith*, 2017 IL App (3d) 150265, ¶ 19, 84 N.E.3d 591).

¶ 14                              C. The Proceedings on Remand

¶ 15                    1. *The Trial Court's Recharacterization of the Petition*

¶ 16            On remand, in December 2018, defendant *pro se* filed his petition for relief from judgment; the petition was nearly identical to the one filed in 2016. In February 2019, the trial court made a docket entry stating, "The Court has reviewed the Post-Conviction Petition and does find the gist of a constitutional claim sufficient to advance it to the second stage." (We note that the court recharacterized defendant's 2-1401 petition as a "Post-Conviction Petition" *sua sponte* and without explanation.) The court scheduled a status hearing for March 29, 2019.

¶ 17            On February 8, 2019, defendant filed a motion for default judgment, arguing that he had properly served the State, the State had failed to respond within 30 days, and defendant was entitled to a default judgment and relief on his petition.

¶ 18            On February 11, 2019, the trial court entered a written order stating (1) the court "has re-characterized the Petition for Relief Of Judgment as a Post-Conviction Petition," (2) "[t]his re-characterization means that any subsequent Post-Conviction Petition will be subject to the restrictions on Successive Post-Conviction Petitions," and (3) defendant had "an opportunity to withdraw the pleading or to amend it so that it contains all the claims appropriate to a Post-Conviction Petition that the litigant believes he has."

¶ 19            In March 2019, defendant filed a motion to reconsider, asking the trial court to vacate its order recharacterizing the 2-1401 petition as a postconviction petition and instead let it proceed pursuant to section 2-1401. Defendant explained that he had filed a motion for default judgment and "[t]he Court's re-characterization of petitioner's Relief From Judgment, unfairly relieves the State of the 30 day responsive pleading deadline that the State failed to meet, and undermines the work and effort petitioner put into the motions filed and the relief warranted."

- 4 -

¶ 20 On March 28, 2019, the trial court entered a written order indicating that it "decided to reconsider its decision to re-characterize the petition to a Post-Conviction Petition and will proceed forward on the original 735 ILCS 5/2-1401 Petition." The court found that the State had not been served properly and denied a default judgment. However, the court ordered the State to respond within 30 days.

¶ 21 On March 29, 2019, the trial court conducted a status hearing. The court explained that it had un-recharacterized the petition at the request of defendant and informed the State that, although the court had found the State was not properly served, it was ordering the State to file a response within 30 days, or the court would enter a default judgment. The State informed the court that another attorney had been assigned the case and "she has a response, basically, ready to be filed." The court continued the case for further status.

¶ 22 2. *Defendant's Motion To Supplement*

¶ 23 On April 4, 2019, defendant filed a "Motion To Supplement Post-Conviction Petition." The certificate of service indicated defendant mailed the motion to supplement on March 31, 2019. In his motion, defendant stated he received an order from the trial court on February 27, 2019, that recharacterized his petition as a postconviction petition. Defendant further stated he filed a motion to reconsider on March 5 but had not heard anything from the trial court. As such, defendant attached "supplemental information for petitioner's Post-Conviction petition, supported by Affidavit." Defendant asked the court to "grant the Motion to Supplement and allow petitioner to have the re-characterized Post-Conviction and the supplemental to become one instrument."

¶ 24 The information attached consisted of 15 pages of allegations and legal arguments claiming seven different constitutional claims, including 12 grounds of ineffective assistance of

trial counsel. Defendant also attached a 94-page appendix, of which 6 pages contained a memorandum of law, written by defendant, claiming the armed career criminal statute was unconstitutional under *District of Columbia v. Heller*, 554 U.S. 570 (2008). The remainder of the appendix contained documents from the record, transcripts, supporting documents not contained in the trial court record, and his own affidavit. Defendant alleged three different general grounds for relief: (1) ineffective assistance of trial counsel, (2) due process violations for failure to ensure a fair trial and sentencing hearing, and (3) misconduct by the State. Defendant also alleged ineffective assistance of appellate counsel for failing to raise these claims on direct appeal.

¶ 25        On April 10, 2019, the trial court conducted a status hearing, at which the State was present and defendant was not. The trial court explained that it had decided to treat the petition as a petition under section 2-1401. The State indicated it would be able to file a responsive pleading within the original 30-day deadline set by the court. The court then informed the State as follows:

"THE COURT: [Defendant] also filed a motion to supplement his post-conviction petition.

MS. MULLISON [(ASSISTANT STATE'S ATTORNEY)]: I did note that when I looked at the docket this morning. I hadn't seen until this morning. I've looked at a lot of what's on file otherwise um— including his previous motion, 1401 motion, but I hadn't seen until this morning.

THE COURT: I am gonna go ahead and grant his motion to supplement the postconviction petition. So, I will grant the motion to supplement the postconviction petition. And then we need to have the Clerk, in this case, send notice to the defendant in the Department of Corrections of this docket entry."

The docket entry, sent to the defendant, stated "Motion to Supplement Post-Conviction Petition is granted."

¶ 26 On April 22, 2019, defendant filed a "motion to request amenditure [*sic*] of order," in which he stated that he received notice of the trial court's March 28, 2019, order on April 11, 2019. Defendant noted that the court gave the State 30 days to respond to the petition for relief from judgment on the grounds that defendant failed to properly serve the State. Defendant claimed he had properly served the State by certified mail and attached documents to support his claim. Defendant asked the court to enter a default judgment against the State.

¶ 27 3. *The State's Responsive Pleadings*

¶ 28 On April 26, 2019, the State filed three pleadings: (1) an answer to defendant's petition for relief from judgment, (2) a motion to dismiss defendant's petition for relief from judgment, and (3) a motion for summary judgment. In these three pleadings, the State responded only to claims defendant asserted in his December 2018 section 2-1401 petition and did not address any of the assertions made in defendant's motion to supplement. The State did refer to defendant's "motion to request amenditure," filed April 22, 2019, asserting it was insufficient to demonstrate proper service. On May 13, 2019, defendant filed responses to each of the State's pleadings. Defendant likewise addressed only issues raised in his 2-1401 petition and did not mention any information related to his motion to supplement.

¶ 29 On May 1, 2019, the trial court conducted a status hearing at which only the State was present. The following exchange occurred:

"MS. MULLISON: And, Your Honor, I filed three separate things. They were all responses, essentially, to defendant's motion. Right before I got this on file, I did notice he filed I guess what I'll term a Motion to Reconsider. Your

- 7 -

deadline for me filing what I have filed, I partially responded to that in my Motion to Dismiss. I took it up a little bit, but I wouldn't say I filed a proper response to that. So I don't know exactly how the Court would like to handle that obviously given that defendant is not present.

THE COURT: What I'm going to do is I'm going to set the motions in this matter, the Motion to Request Amenditure of Order, the Motion to Dismiss, and the Motion for Summary Judgment, I'm going to set those three motions for hearing."

¶ 30        In June 2019, the trial court conducted a hearing on the outstanding motions at which defendant was personally present. The court began as follows:

"I will state for the record the Court has reviewed the file as to [defendant.] I have reviewed the 1401 petition that has been filed in this case. I had initially reviewed that. It's converting it to a postconviction. There was a motion to reconsider that. I did reconsider, decided to leave it at the 1401 petition.

Then there have been multiple things filed in this case. There was a petition on the 1401. There has been a motion for default judgment. State has filed motions for summary judgment and a motion to dismiss the petition in this matter.

Court has reviewed the original petition along with the supplements to that. I have reviewed the crime lab analysis from the two different dates on this. I'll try to take these in order."

¶ 31        The trial court first heard argument on defendant's motion for default and denied the motion, concluding that its previous finding of improper service was correct and the issue was moot in so far as the State had filed responsive pleadings. The court then stated it had

reviewed the State's motions, defendant's responses thereto, all attachments, the appellate court decision, and the prior trial court decision dismissing the petition on the merits. The court then stated it would be addressing the State's motions together and asked the State for all arguments regarding why the petition should be dismissed. Defendant would then get a chance to respond.

¶ 32        In its argument, the State addressed only two claims: (1) that the subsequently issued DNA report would not probably change the outcome at trial, in part because the defendant confessed and (2) the petition was fatally deficient because defendant did not attach an affidavit from the allegedly recanting witness. (The State also argued the petition was untimely but then conceded to the court that the petition could be considered timely filed.) The defendant initially argued only that he had made substantial efforts to obtain the witness's statements and filed an affidavit in compliance with Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013).

¶ 33        The trial court first concluded that the petition was timely filed. The court next addressed "an argument that was made in the petition for relief that I lack proper jurisdiction because there's not been proper service, but the [State] ha[s] filed a response at this stage, and so I don't think that that's appropriate."

¶ 34        The trial court noted that "one of the decisions the Court has to make is would it make a difference." The court then stated as follows:

> "[B]ut as I look at everything that is in front of the Court, I cannot find that, first of all, the amended results from the State Crime Lab would have changed the results and made a difference in this case, so at this stage, I am going to allow the State's motion to dismiss the 1401 petition. [Defendant], I do understand what your position is. I've tried to make as good a record as I could today so that if this were to go up on appeal, I'm going to assume that you do want it to go up on

appeal, we've at least made as good a record as I think we could. I think you've done a good job arguing your point and making it clear, even though you're not an attorney, I do not think you're illiterate by any stretch of the imagination, so you have made your arguments. And given the fact that what I've seen throughout all of the petitions and the actual exhibits that were attached to those, I think you've made a valid argument. I just don't see, in the Court's opinion, that it's going to make a huge difference, even though there is an amended DNA. There is not the affidavit from [the recanting witness], but there is the arguments that have been made that statements were made changing her testimony, along with the argument that the confession wouldn't have been made but for these other factors. So I am going to dismiss the petition at this stage."

The trial court did not enter a written order. The docket entry for the hearing stated, in relevant part, "Cause called for hearing on the State's Motion to Dismiss Defendant's Petition for Relief from Judgment. Arguments heard. The State's Motion to Dismiss the 1401 Petition is AL-LOWED."

¶ 35                          4. *The Post-judgment Proceedings*

¶ 36        On July 1, 2019, defendant filed a motion to reconsider the trial court's dismissal of his petition, and defendant also filed a "motion requesting status update," in which defendant asserted that he had filed a motion to supplement his recharacterized postconviction petition, and because the trial court switched back to characterizing the petition as a section 2-1401 petition, the motion to supplement, which the trial court allowed on April 10, 2019, became a freestanding postconviction petition. Defendant asked for a status determination on that postconviction petition.

¶ 37        On July 8, 2019, the trial court made a docket entry, stating as follows:

> "The Court has reviewed the record along with the Motion to Reconsider filed July 1, 2019. The Motion to Reconsider is DENIED. The Motion to Supplement Post-Conviction filed April 4, 2019 is DENIED based on the Court reconsidering its decision to re-characterize the Petition and the decision to proceed forward on the original 735 ILCS 5/2-1401 Petition as decided in the Order filed March 28, 2019."

¶ 38        On July 19, 2019, defendant filed a "motion to supplement post-conviction petition," in which he requested "to supplement the [p]ortion of the post-conviction that was not part of the 2-1401 petition with the attached argument." The certificate of service indicated the motion was mailed on July 12, 2019. On July 22, 2019, the trial court made a docket entry stating, "Motion to Supplement Post-Conviction Petition is denied based on nothing pending in court at this time."

¶ 39        On July 31, 2019, defendant filed a motion stating he "was never notified by the Court that he would need to refile the Supplemental as a Post-Conviction or that the ruling on 4-10-19 was nullified." Defendant explained that his deadline for filing a postconviction petition was June 26, 2019, and he received the trial court's July 8, 2019, order—reversing its decision to grant the motion to supplement—on July 22, 2019. Defendant stated, "The Supplemental filed 4-4-19 is the actual Post-Conviction petition that Petitioner planned to file prior to the re-characterization and should be treated as such." Defendant continued, "In the motion to reconsider the re-characterization, petitioner asked this Court to reconsider the re-characterization only and thus the Supplemental should have remained as petitioner's Post-Conviction petition ***." Defendant requested the court treat the motion to supplement as a timely postconviction petition or,

- 11 -

alternatively, that he "be allowed to file a late Post-Conviction petition as Petitioner was not at fault."

¶ 40      On August 6, 2019, the trial court made a docket entry stating as follows:

"The Court has reviewed the docket, the record and Petitioner's Motion Requesting Supplemental Be Treated As Petitioner's Post-Conviction. The Court reconsidered its decision to recharacterize the 735 ILCS [5/]2-1401 Motion based on Petitioner's Motion in an order March 28, 2019. The Court then treated the Motion to Supplement as part of the 2-1401 Motion. The Motion to Treat the Supplement as a new Post-Conviction is denied as those issues were raised in the 2-1401 Motion."

¶ 41      This appeal followed.

¶ 42                    II. ANALYSIS

¶ 43      Defendant appeals, arguing the trial court erred by (1) failing to act on the post-conviction petition within 90 days, (2) applying the wrong standard for dismissal, and (3) denying defendant leave to file his postconviction petition. We conclude the trial court erred and remand for further proceedings.

¶ 44            A. The Standard of Review and Applicable Law

¶ 45      The Post-Conviction Hearing Act (Act) provides a criminal defendant the means to redress substantial violations of his constitutional rights that occurred in his original trial or sentencing. *People v. Crenshaw*, 2015 IL App (4th) 131035, ¶ 23, 38 N.E.3d 1256; 725 ILCS 5/122-1 (West 2018). The Act contains a three-stage procedure for relief. *People v. Allen*, 2015 IL 113135, ¶ 21, 32 N.E.3d 615; 725 ILCS 5/122-2.1 (West 2018). Within the first 90 days after the petition is filed and docketed, the trial court shall dismiss a petition summarily if the court

- 12 -

determines it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). A petition may be dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact. *Allen*, 2015 IL 113135, ¶ 25. Because most postconviction petitions are drafted by *pro se* defendants, "the threshold for a petition to survive the first stage of review is low." *Id.* ¶ 24. If a petition alleges sufficient facts to state the gist of a constitutional claim, first-stage dismissal is inappropriate. *Id.*

¶ 46    Trial courts may recharacterize petitions, motions, or other collateral attacks on convictions filed by a defendant as a postconviction petition if that is a more appropriate procedural vehicle for the defendant's claims. *People v. Shellstrom*, 216 Ill. 2d 45, 51-53, 833 N.E.2d 863, 867-68 (2005). However, the Act contemplates the filing of only one postconviction petition and expressly provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2018). Because the Act typically only provides for one petition, the court must warn a defendant about the consequences of the recharacterization and provide the defendant the opportunity to amend or withdraw the filing. *Shellstrom*, 216 Ill. 2d at 57. This court has cautioned against recharacterization. *People v. Holliday*, 369 Ill. App. 3d 678, 681, 867 N.E.2d 1016, 1019 (2007) ("[T]rial courts should be hesitant to use this authority and do so only in unusual and compelling circumstances." (Internal quotation marks omitted.)); *People v. Hood*, 395 Ill. App. 3d 584, 589, 916 N.E.2d 1287, 1291 (2009) (Steigmann, J., specially concurring) ("Trial courts would be well advised to rethink the wisdom of ever recharacterizing a pleading into a postconviction petition under the Act[.]").

¶ 47    Appellate courts review first-stage dismissals of postconviction petitions *de novo*. *Allen*, 2015 IL 113135, ¶ 19. A trial court's decision not to recharacterize a collateral attack as a postconviction petition is not reviewable. *People v. Stoffel*, 239 Ill. 2d 314, 324, 941 N.E.2d 147,

154 (2010).

¶ 48                                    B. This Case

¶ 49          In this case, this court is reviewing the trial court's August 8, 2019, order stating that it had (1) granted defendant's motion to supplement and (2) considered the allegations in that motion when it denied the 2-1401 petition. Defendant claims the trial court erred because the motion to supplement became a freestanding postconviction petition when the court granted that motion despite no postconviction petition being on file. Defendant reasons that because the trial court had first reconsidered and reversed its decision to recharacterize the 2-1401 petition as a postconviction petition, no postconviction petition existed to supplement, and the effect of the court's order granting leave to supplement was to file the supplement as a freestanding postconviction petition.

¶ 50          The State argues that the trial court's August 2019 order, clarifying that the motion to supplement had been granted and the 2-1401 petition thereafter included defendant's postconviction claims, was correct. The State contends that the court considered defendant's postconviction claims at the time it denied defendant's 2-1401 petition.

¶ 51          We conclude the trial court erred for two reasons: (1) the court's reasoning is contradicted by the record and (2) the court's actions caused the confusion that denied defendant the chance to argue his postconviction claims.

¶ 52                  1. *The Court's Reasoning Is Contradicted by the Record*

¶ 53          The trial court's reasoning is contradicted by the record. The parties' actions demonstrate that they believed the 2-1401 petition and the supplemental postconviction petition to be separate.

¶ 54          First, the record clearly demonstrates that the parties and the court did not

- 14 -

consider the motion to supplement to be at issue at the June 2019 hearing on the State's motion to dismiss. Neither the State nor defendant addressed any of the claims contained in the motion to supplement in their voluminous briefing. Further, no one, including the court, addressed any of those claims at any time, nor did they make any statements remotely related to any of the allegations in those claims.

¶ 55        The trial court's statements in its oral ruling also reflect that it was not considering the motion to supplement. The court stated that it "tried to make as good a record as I could today so that if there were to go up on appeal *** we've at least made as good a record as I think we could." The trial court's record is exceptionally thorough as to the issues raised in the original 2-1401 petition. The fact that the trial court (1) was trying to create a complete record for appeal, (2) did, in fact, make such a record but only regarding the issues raised in the 2-1401 petition, and (3) failed to mention at all any of the dozens of claims set forth in defendant's motion to supplement supports the conclusion that the court did not consider the motion to supplement to be a part of the 2-1401 petition at the time it made its ruling. Because the court, the State, and defendant all consistently acted as if the issues in the original petition were the only ones before the court, defendant cannot be responsible for the ambiguity in the record.

¶ 56        First, defendant's belief that he had filed a separate postconviction petition was entirely reasonable. The trial court un-recharacterized his petition, granted his motion to supplement, and defendant's motion to supplement contained all the information required by the Act. If the supplement was filed, then the State could not respond, the court had to evaluate it within 90 days, and there was nothing else for defendant to do. See 725 ILCS 5/122-2.1 (West 2018). Accordingly, the record is entirely consistent with defendant's understanding and inconsistent with the trial court's order concluding it had addressed defendant's postconviction claims

simultaneously with the 2-1401 petition.

¶ 57    Second, when defendant filed a motion for leave to file a postconviction petition based on the motion to supplement (which at that moment had been denied per the trial court's July 8, 2019, docket entry), the court could not change its ruling on the motion to supplement in the manner it did. Defendant was attempting to file his first postconviction petition. The court needed to apply the proper standard for postconviction petitions. *Id.* After dismissing the 2-1401 petition and stating that the motion to supplement had been denied, the court could not then reconsider its denial of the motion to supplement and suddenly inform defendant that not only had that motion actually been *granted* (confusing enough, given the explicit docket entry from a mere two weeks prior to the contrary), but also that the court had considered and rejected all of the claims *sub silentio* in an oral ruling.

¶ 58    Third, the trial court lacked the authority to go back and reconsider its prior ruling on the motion to supplement after entering a final judgment. Generally, "[a] complaint cannot be amended after final judgment in order to add new claims and theories or to correct other deficiencies." *Tomm's Redemption, Inc. v. Hamer*, 2014 IL App (1st) 131005, ¶ 14, 7 N.E.3d 750. "Following judgment, a complaint may only be amended in order to conform the pleadings to the proofs. See 735 ILCS 5/2-616(c) (West 2010)." *Id.* The rules for section 2-1401 petitions are the same as those for civil actions generally, and a section 2-1401 petition essentially constitutes a complaint in a new action collaterally attacking a judgment. *People v. Vincent*, 226 Ill. 2d 1, 8, 871 N.E.2d 17, 23 (2007).

¶ 59    We conclude that the trial court's actions deprived defendant of his opportunity to file a postconviction petition. In coming to this conclusion, we note that the court entered its judgment on defendant's 2-1401 petition on June 24, 2019. In a docket entry on July 8, 2019, the

court denied the motion to supplement and defendant's motion to reconsider. The motion to supplement sought to add dozens of constitutional claims and was supported by entirely different allegations. Accordingly, the only way the trial court could have permitted the amendment would have been to make the pleadings conform to the proofs. *Hamer*, 2014 IL App (1st) 131005, ¶ 14. But, as explained, nothing in the record suggests the parties or the court ever addressed in any way the claims raised in defendant's motion to supplement. Because the trial court's rulings were at best confusing and at worst contradictory to one another, we reverse the trial court's August 8, 2019, order and deem defendant's motion to supplement a freestanding postconviction petition.

¶ 60          2. *The Trial Court's Actions Unfairly Prejudiced Defendant*

¶ 61          Even if we accept the trial court's conclusion that it had in fact considered all of defendant's claims from the motion to supplement when it denied the 2-1401 petition, we still conclude that reversal is necessary because the court's actions caused the confusion that denied defendant the chance to present his postconviction claims.

¶ 62          The purpose of the *Shellstrom* warnings is to protect a defendant from unknowingly forfeiting postconviction claims. And in this case, the trial court's rulings ended up with defendant's postconviction claims being adjudicated on the merits without his knowledge. Defendant repeatedly explained in his filings and in his oral statements before the court that he was not an attorney and was unfamiliar with the law and legal requirements. It would be disingenuous at best to suggest that defendant understood that his postconviction claims were being argued at the June 2019 hearing or that defendant wanted them to be adjudicated in conjunction with his 2-1401 petition. Instead, the two filings had logically distinct claims. Defendant, quite rightly, asserted claims in his 2-1401 petition that only involved newly discovered evidence. Meanwhile, in his April 4, 2019, motion to supplement, defendant asserted only claims of deprivations of

constitutional rights during trial and sentencing.

¶ 63        The trial court told defendant it was treating his 2-1401 petition as a postconviction petition and provided the proper admonishments. However, the court did not do the same when it came to defendant's motion to supplement. That motion requested leave to file additional *postconviction* claims to his *recharacterized* petition. When the court granted the motion to supplement, it had already un-recharacterized defendant's 2-1401 petition. But the court did not advise defendant at any point that it was treating his motion to supplement his *recharacterized* postconviction petition instead as motion to supplement the *2-1401* petition. Accordingly, this case presents a fact pattern that is essentially the inverse of *Shellstrom*. Defendant attempted to file additional postconviction claims, but the court *sua sponte* recharacterized his postconviction claims as 2-1401 claims.

¶ 64        Defendant was prejudiced by the trial court's actions because the standards for section 2-1401 petitions and postconviction petitions are completely different. A section 2-1401 petition may be dismissed if it fails to state a claim for which relief can be granted (*Vincent*, 226 Ill. 2d at 8), while a postconviction petition may be dismissed only if the allegations are patently frivolous and without merit. 725 ILCS 5/122-2.1(a)(2) (West 2016). A postconviction petition merely needs to state the gist of a constitutional claim, and such petitions are construed liberally, understanding that they are not drafted by attorneys. *Allen*, 2015 IL 113135, ¶ 24. Attorneys can and are frequently required to amend petitions to (1) assert any bases for excusing untimely filing, (2) avoid *res judicata* and procedural bars to claims, and (3) include all the necessary allegations to state a complete legal claim if any elements of a claim are missing (*e.g.*, an allegation of prejudice for ineffective assistance where the petition alleges only deficient performance). *People v. Perkins*, 229 Ill. 2d 34, 43-44, 890 N.E.2d 398, 403-04 (2007); *People v. Turner*, 187 Ill.

2d 406, 413, 719 N.E.2d 725, 729 (1999).

¶ 65        "It has long been recognized that a lack of legal knowledge might cause a *pro se*

prisoner to select the wrong method to collaterally attack his conviction.

* * *

A *pro se* defendant is not necessarily master of his claim ***. A pleading is not

determined by the label applied to it by the defendant, but by its content and character. [Cita-

tion.] Recharacterizing a petition protects a *pro se* litigant from the possible harsh result arising

from his lack of legal knowledge in selecting a method to attack his conviction ***." *People v.*

*Jenkins*, 2016 IL App (1st) 133286, ¶ 21, 57 N.E.3d 521 (quoting *People v. Smith*, 386 Ill. App.

3d 473, 476-78, 898 N.E.2d 119, 124 (2008), *overruled on other grounds by People v. Boykins*,

2017 IL 121365, 93 N.E.3d 504).

¶ 66        We see no reason why the same logic should not apply in reverse, particularly un-

der the unique circumstances of this case. Here, the trial court attempted to recharacterize de-

fendant's 2-1401 petition, and defendant informed the court that he was aware of his decision

and made a conscious choice. However, defendant was also in a bind because he did not know

that the court had un-recharacterized his 2-1401 petition, so he (reasonably) filed a motion to

supplement his would-be postconviction petition to prevent any of his separate postconviction

claims from being barred by the single-petition rule. The trial court's flip-flopping of its ruling

effectively bars, as *res judicata*, over 100 pages of constitutional claims and supporting docu-

ments that defendant had every right to make and which he believed were properly before the

court.

¶ 67        The trial court should have recognized this problem when it considered the mo-

tion to supplement. The motion itself explained that defendant had not heard back from the court

regarding whether the petition was still recharacterized as a postconviction petition. The court was aware of (1) the *Shellstrom* warnings and (2) the fact that it had just stated it was no longer treating the petition as a postconviction petition but instead as a section 2-1401 petition again. The court's decision to grant the motion to supplement is thus confusing. Either the court was not really un-recharacterizing the petition or defendant's motion had been denied. Obviously, if no postconviction petition is on file, it cannot be supplemented.

¶ 68        The burden of clearing up the confusion should fall upon the court. Courts have routinely recognized that where confusion exists concerning which avenue of relief the defendant has selected, the trial court should admonish the defendant and clear up the confusion. See, *e.g.*, *People v. Bland*, 2011 IL App (4th) 100624, ¶ 23, 961 N.E.2d 953. Defendant, as a *pro se* litigant, cannot be expected to know the legal effect of a court's granting a motion to supplement a petition that no longer exists. See *Jenkins*, 2016 IL App (1st) 133286, ¶ 22. Indeed, even this court has had trouble finding an analogous situation in Illinois law. The court granted the motion to supplement without advice from the State or defendant, and the matter was not addressed again until defendant requested a status on his postconviction petition.

¶ 69        In the interest of judicial economy, we conclude that defendant's postconviction petition states the gist of a constitutional claim and should be advanced to the second stage. On remand, the trial court should appoint postconviction counsel, who can then evaluate defendant's claims and file anything counsel deems necessary.

¶ 70                            III. CONCLUSION

¶ 71        For the reasons stated, we reverse the trial court's judgment and remand with directions to advance the petition to the second stage and appoint counsel.

¶ 72        Reversed and remanded with directions.